

**FILED**

JUL    2 2009

Allen Matkins
~~CLERK, U.S. DISTRICT COURT~~
~~EASTERN DISTRICT OF CALIFORNIA~~
BY _____
DEPUTY CLERK

Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law
1901 Avenue of the Stars, Suite 1800 | Los Angeles, CA 90067-6019
Telephone: 310.788.2400 | Facsimile: 310.788.2410
www.allenmatkins.com

Melana J. Barnes
E-mail: mbarnes@allenmatkins.com
Direct Dial: 213.955.5570  File Number: G8814-004/LA832238.01

**Via Messenger**

July 1, 2009

United States District Court
California Eastern District
4-200 Robert T. Matsui U. S. Courthouse
501 I Street
Sacramento, CA 95814-7300

2: 0 9 - MC     00 5 7 JPM

Attn:  **Civil Division Clerk**

Re:   *Federal Trade Commission v. MCS Programs, LLC, etc., et al.*
      *U. S. District Court, Western District of Washington*
      *Case No. C09-5380RBL*
      *Notice of Receivership (28 U.S.C. § 754)*

Dear Clerk:

Please be advised that the United States District Court, Western District of Washington, has ordered the appointment of as Receiver in the above-captioned case. We are submitting this filing on behalf of the appointed Receiver, Michael A. Grassmueck, by Mark R. Hartney, Esq. of this firm.

Pursuant to 28 U.S.C. § 754, we enclose for filing with this District Court the following:

1. Complaint for Permanent Injunction and Other Relief **filed June 25, 2009;**

2. Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Immediate Access to Business Premises, Limited Expedited Discovery, and an Order to Show Cause Why a Preliminary Injunction Should Not Issue, **granted June 26, 2009;** and

3. Notice to Lift Seal **ordered June 30, 2009.**

The filing fee of $39.00 is enclosed herewith. Please issue a miscellaneous number for this matter and conform a copy for our use.

Los Angeles | Orange County | San Diego | Century City | San Francisco | Del Mar Heights | Walnut Creek



Allen Matkins Leck Gamble Mallory & Natsis LLP
Attorneys at Law

United States District Court
July 1, 2009
Page 2

Thank you for your assistance, and please telephone me should you have any questions.

Very truly yours,

Melana J. Barnes
Paralegal

Enclosures

cc:    Mark R. Hartney, Esq.
       David R. Zaro, Esq.

FILED — RECEIVED — LODGED

JUN 25 2009

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

09-CV-05380-CMP

FILED

JUL 2 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C 0 9 - MC 5 7 JAM GGH

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. C09 5380 Rsb |
| Plaintiff, | |
| v. | COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF |
| MCS PROGRAMS, LLC, a Washington Limited Company, also doing business as Mutual Consolidated Savings; UNITED SAVINGS CENTER, INC., a Washington corporation, also doing business as Mutual Consolidated Savings; USC PROGRAMS, LLC, a Washington Limited Liability Company, also doing business as Mutual Consolidated Savings; PAUL MORRIS THOMPSON, individually and as an officer of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC; and MIRANDA CAVENDAR, also known as Miranda Cavender, individually and as a manager of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC, | [FILED UNDER SEAL]  ORIGINAL |
| Defendants. | |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint against

MCS Programs, LLC, United Savings Center, Inc., USC Programs, LLC, Paul Morris Thompson, and

Miranda Cavendar (collectively, "Defendants"), alleges:

1. The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer

Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary,

FEDERAL TRADE COMMISSION
915 Second Ave., Su. 2896
Seattle, Washington 98174
(206) 220-6350

1

2

3

4

5

6

7    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
8    AT TACOMA

9    FEDERAL TRADE COMMISSION,

10                                              Case No. C09-5380RBL
           Plaintiff,

11            v.

12   MCS PROGRAMS, LLC, a Washington        **TEMPORARY RESTRAINING
     Limited Liability Company, also doing    ORDER WITH ASSET FREEZE,
13   business as Mutual Consolidated Savings;  APPOINTMENT OF TEMPORARY
     UNITED SAVINGS CENTER, INC., a          RECEIVER, IMMEDIATE ACCESS
14   Washington corporation, also doing business  TO BUSINESS PREMISES, LIMITED
     as Mutual Consolidated Savings; USC      EXPEDITED DISCOVERY, AND AN
15   PROGRAMS, LLC, a Washington Limited     ORDER TO SHOW CAUSE WHY A
     Liability Company, also doing business as  PRELIMINARY INJUNCTION
16   Mutual Consolidated Savings; PAUL        SHOULD NOT ISSUE**
     MORRIS THOMPSON, individually and as an
17   officer of MCS Programs, LLC, United
     Savings Center, Inc., and USC Programs, LLC;
18   and MIRANDA CAVENDER, individually
     and as a manager of MCS Programs, LLC,
19   United Savings Center, Inc., and USC
     Programs, LLC,
20

21          Defendants.

22

23

24

25

26

27

28

2nd
document



**09-CV-05380-ORD**

| FILED _____ LODGED |
| RECEIVED |
| **JUN 29 2009** |
| CLERK U.S. DISTRICT COURT |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| BY _____ DEPUTY |

| FILED _____ LODGED |
| RECEIVED |
| **JUN 30 2009** |
| CLERK U.S. DISTRICT COURT |
| WESTERN DISTRICT OF WASHINGTON AT TACOMA |
| BY _____ DEPUTY |

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

FEDERAL TRADE COMMISSION,

        Plaintiff,

        v.

MCS PROGRAMS, LLC, a Washington limited liability company, also doing business as Mutual Consolidated Savings; UNITED SAVINGS CENTER, INC., a Washington corporation, also doing business as Mutual Consolidated Savings; USC PROGRAMS, LLC, a Washington limited liability company, also doing business as Mutual Consolidated Savings; PAUL MORRIS THOMPSON, individually and as an officer of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC; and MIRANDA CAVENDER, individually and as a manager of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC;

Civil No.  C09-5380RBL

**NOTICE TO LIFT SEAL**

Notice to Lift Seal- 1

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Scottle, Washington 98174
(206) 220-6350

3rd
document



09-CV-05380-CMP

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MCS PROGRAMS, LLC, a Washington Limited Liability Company, also doing business as Mutual Consolidated Savings; UNITED SAVINGS CENTER, INC., a Washington corporation, also doing business as Mutual Consolidated Savings; USC PROGRAMS, LLC, a Washington Limited Liability Company, also doing business as Mutual Consolidated Savings; PAUL MORRIS THOMPSON, individually and as an officer of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC; and MIRANDA CAVENDAR, also known as Miranda Cavender, individually and as a manager of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC,<br><br>Defendants. | Case No. C09 5380 RJB<br><br>COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF<br><br>[FILED UNDER SEAL]<br><br>ORIGINAL |

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint against

MCS Programs, LLC, United Savings Center, Inc., USC Programs, LLC, Paul Morris Thompson, and

Miranda Cavendar (collectively, "Defendants"), alleges:

      1.    The FTC brings this action under Sections 13(b) and 19 of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer

Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary,

FEDERAL TRADE COMMISSION<br>915 Second Ave., Ste. 2896<br>Seattle, Washington 98174<br>(206) 220-6350

1  preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution,

2  disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in

3  violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's

4  Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

6      2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

7  §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

8      3.      Venue in the United States District Court for the Western District of Washington is

9  proper under 28 U.S.C §1391(b) and (c), and 15 U.S.C. §§ 53(b).

## PLAINTIFF

11     4.      Plaintiff FTC is an independent agency of the United States Government created by

12  statute. 15 U.S.C. §§ 41- 58. The FTC is charged, *inter alia,* with enforcement of Section 5(a) of the

13  FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting

14  commerce. The FTC is also charged with enforcement of the Telemarketing Act, 15 U.S.C. §§ 6101-

15  6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R.

16  Part 310, which prohibits deceptive and abusive telemarketing acts or practices. The FTC is

17  authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the

18  FTC Act and the TSR, and to secure such equitable relief as may be appropriate in each case, including

19  restitution and disgorgement. 15 U.S.C. §§ 53(b), 57b, 6102(c), and 6105(b).

## DEFENDANTS

21     5.      Defendant **MCS PROGRAMS, LLC,** is a Washington corporation with its principal

22  place of business at 1215 Earnest S. Brazill Street, Suite 33, Tacoma, Washington. MCS Programs also

23  does business as Mutual Consolidated Savings, among other names. Defendant MCS Programs

24  transacts or has transacted business in the Western District of Washington.

25     6.      Defendant **UNITED SAVINGS CENTER, INC.,** is a Washington corporation with its

26  principal place of business at 1215 Earnest S. Brazill Street, Suite 33, Tacoma, Washington. United

27  Savings Center also does business as Mutual Consolidated Savings, among other names. Defendant

28  United Savings Center transacts or has transacted business in the Western District of Washington.

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1     7.     Defendant **USC PROGRAMS, LLC**, is a Washington corporation with its principal

2    place of business at 1215 Earnest S. Brazill Street, Suite 33, Tacoma, Washington. USC Programs also

3    does business as Mutual Consolidated Savings, among other names. Defendant USC Programs

4    transacts or has transacted business in the Western District of Washington.

5     8.     Defendant **PAUL MORRIS THOMPSON** ("Thompson") is owner, President, Chief

6    Executive Officer, and Registered Agent of the corporate Defendants, United Savings Center, MCS

7    Programs, and USC Programs. He has signed papers as president of United Savings Center and is

8    listed in corporate records as the only Member of the Board of both MCS Programs and USC

9    Programs. Since March 1, 1998, he has also owned "Mutual Consolidated Savings" as an assumed

10    business name registered in Washington state, and has done business under that name, among other

11    names. Thompson resides in, and transacts or has transacted business in, this District. At all times

12    material to this Complaint, acting alone or in concert with others, he has formulated, directed,

13    controlled, or participated in the acts and practices of the corporate Defendants, including the acts and

14    practices set forth in this Complaint.

15     9.     Defendant **MIRANDA CAVENDAR** ("Cavendar," also known as Miranda Cavender)

16    is employed as Chief Operating Officer by the corporate Defendants, United Savings Center, MCS

17    Programs, and USC Programs, and has also been employed in the unincorporated business owned and

18    operated by Thompson. She has been listed at times in official corporate records as president of

19    United Savings Center. Cavendar resides in, and transacts or has transacted business in, this District.

20    At all times material to this Complaint, acting alone or in concert with others, she has formulated,

21    directed, controlled, or participated in the acts and practices of the corporate Defendants, including the

22    acts and practices set forth in this Complaint, as well as participating in the unincorporated business

23    owned and operated by Thompson.

24                   **COMMON ENTERPRISE**

25     10.    Corporate Defendants MCS Programs, LLC, United Savings Center, Inc., and USC

26    Programs, LLC, have operated and functioned as a common business enterprise while engaging in the

27    deceptive and unfair acts and practices alleged in this complaint. Because the corporate Defendants

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   have operated as a common enterprise, each of them is jointly and severally liable for the deceptive

2   and unfair acts and practices alleged below.

3                                   **COMMERCE**

4        11.    At all times relevant to this Complaint, Defendants have maintained a substantial course

5   of trade, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C.

6   § 44.

7                          **DEFENDANTS' BUSINESS PRACTICES**

8        12.    Since at least 2006, Defendants have telemarketed a "rapid debt reduction" program to

9   consumers nationwide in the U.S. and in Canada. In many instances, the telemarketing calls are

10  initiated by a live representative. In many other instances, they are initiated using a telemarketing

11  service that delivers prerecorded voice messages, known as "voice broadcasting" or "robocalling."

12  Defendants also market their program via the Internet on several websites, including

13  www.mcsprograms.com, www.uscprograms.com, and www.mutualsavingsinc.com. Defendants tell

14  consumers that if they purchase Defendants' program, Defendants will obtain substantially lower

15  interest rates for the consumers' credit cards by negotiating with the card issuers. Defendants also

16  claim that their program will provide substantial savings to consumers, typically $2,500 or more, and

17  enable consumers to pay off their debt three to five times faster without increasing their monthly

18  payments. Defendants and their telemarketers also expressly promise that a consumer can obtain a full

19  refund from Defendants if the consumer does not save at least the promised amount, typically $2,500

20  or more. Defendants' websites echo the telemarketers' refund promise, stating that there is no risk to

21  the consumer because of the availability of a refund.

22       13.    Defendants sometimes obtain the consumer's credit card number before contacting the

23  consumer. Defendants and their telemarketers use this information to generate consumer trust by

24  displaying knowledge of the consumers' accounts, which helps mislead the consumer about the

25  relationship between the bank issuing the credit card and Defendants.

26       14.    Defendants typically charge a fee of between $690 and $899 USD for their "rapid debt

27  reduction" program. Defendants represent that the amount of the fee will be quickly offset by savings

28  achieved under the Defendants' program.

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    15.    Defendants do not disclose to Canadian consumers that the fee for their program is in

2    U.S. Dollars. Thus, when Canadian consumers authorize what they believe is a fee of $690 Canadian

3    Dollars, they may later find they have been charged $800 Canadian Dollars or more as a result of the

4    currency exchange rate.

5    16.    In many instances, Defendants do not obtain substantially lower credit card interest

6    rates for consumers. Thus, in those instances consumers do not save thousands of dollars, and they are

7    unable to pay off their debts three to five times faster as a result of the promised reduction of their

8    credit card interest rates.

9    17.    After a consumer has paid for the Defendants' service, Defendants send the consumer

10   general information about finances, along with a form for the consumer to complete and return listing

11   all of the consumer's indebtedness. Sometimes, Defendants then send the consumer a computer-

12   generated accelerated payment schedule or "Rapid Debt Reduction" plan, that, if adhered to, will

13   purportedly allow the consumer to pay off his or her debts years faster than if the consumer makes

14   only minimum monthly payments. In many instances, after Defendants have failed to achieve the

15   promised interest rate reduction for the consumer, Defendants claim their "Rapid Debt Reduction"

16   plan shows how the promised savings are realized by increasing the consumer's monthly payments.

17   Defendants do not disclose to consumers, prior to their purchase of the program, that the "Rapid Debt

18   Reduction" plan is the basis for the savings claims and that the promised savings may take decades to

19   achieve.

20   18.    In many instances, Defendants do not honor their promise to refund if they do not save

21   consumers the amount promised, instead claiming that the consumer has failed to comply with

22   previously undisclosed conditions, or that Defendants have complied with their obligations in some

23   way other than providing the promised interest rate reduction and savings. When Defendants do

24   provide a refund, in many instances they deduct a "restocking fee" of 12.5%, also undisclosed prior to

25   charging a consumer's credit card.

26   19.    While telemarketing their program, Defendants or their telemarketers have made

27   numerous calls to telephone numbers on the National Do Not Call Registry ("Registry"), as well as to

28   consumers who have previously asked Defendants not to call them again. In some instances,

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1 | Defendants or their telemarketers also "spoof" their calls by transmitting phony Caller ID information
2 | so that call recipients do not know the source of the calls.

3 |     20.    In numerous instances, Defendants, acting directly or through one or more
4 | intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a
5 | clear and conspicuous manner to the person receiving the call: the identity of the seller; that the
6 | purpose of the call is to sell goods or services; or the nature of the goods or service. In numerous
7 | instances since December 1, 2008, Defendants, acting directly or through one or more intermediaries,
8 | have initiated prerecorded telemarketing calls to consumers that failed to promptly make such
9 | disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

10 | <div align="center">**VIOLATIONS OF SECTION 5 OF THE FTC ACT**</div>

11 |     21.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or
12 | practices in or affecting commerce," including such acts or practices involving foreign commerce that
13 | "involve material conduct occurring within the United States."

14 |     22.    Misrepresentations or omissions of material fact constitute deceptive acts or practices
15 | prohibited by Section 5(a) of the FTC Act.  15 U.S.C. § 45(a).

16 | <div align="center">**COUNT ONE**</div>

17 | <div align="center">**Misrepresentations in Violation of Section 5**</div>

18 |     23.    In numerous instances, in connection with the marketing, offering for sale, or sale of
19 | Defendants' "debt reduction" program, Defendants have represented, expressly or by implication, that:

20 |         A.    Consumers who purchase Defendants' "debt reduction" program will have their
21 |              credit card interest rates reduced substantially;

22 |         B.    Consumers who purchase Defendants' "debt reduction" program will save, in a
23 |              short time, hundreds or thousands of dollars, or more than the amount of the fees
24 |              consumers pay; and

25 |         C.    Consumers who purchase Defendants' "debt reduction" program will be able to
26 |              pay off their debt three to five times faster without increasing their monthly
27 |              payments.

28 |

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1      24.    In truth and in fact, in numerous instances in which Defendants have made the

2   representation above:

3              A.    Consumers who purchase Defendants' "debt reduction" program do not have

4                    their credit card interest rates reduced substantially;

5              B.    Consumers who purchase Defendants' "debt reduction" program do not save, in

6                    a short time, hundreds or thousands of dollars, or more than the amount of the

7                    fees consumers pay; and

8              C.    Consumers who purchase Defendants' "debt reduction" program are not able to

9                    pay off their debt three to five times faster without increasing their monthly

10                   payments.

11     25.    Therefore, the representations set forth in Paragraph 23 above are false and misleading

12   and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C.

13   § 45(a).

14                              **COUNT TWO**

15              **Failure to Disclose Material Refund Conditions in Violation of Section 5**

16     26.    In numerous instances, in connection with the marketing, offering for sale, or sale of

17   Defendants' "debt reduction" program, Defendants have represented, expressly or by implication, that

18   consumers who purchase Defendants' "debt reduction" program are guaranteed a full refund if they do

19   not achieve the amount of savings represented by Defendants.

20     27.    In numerous instances in which Defendants have made the representation above,

21   Defendants have failed to disclose, or to disclose adequately, to consumers, before charging

22   consumers' credit cards, that:

23              A.    Consumers who do not achieve the guaranteed savings as a result of Defendants

24                    negotiating reduced interest rates with consumers' creditors may be denied a full

25                    refund if the amount of savings guaranteed potentially can be achieved by

26                    following a multi-year, accelerated debt payment schedule provided to

27                    consumers by Defendants;

28

COMPLAINT- Page 7

B.     Defendants may impose other conditions on the refund guarantee, such as requiring the refund claim be made within a minimum or maximum period of time after the consumer was charged; and

C.     If the consumer requests a refund and any refund is given, Defendants may retain 12% or more of the amount paid by the consumer.

28.     Defendants' failure to disclose or disclose adequately the material information described in Paragraph 27, in light of the representation described in Paragraph 26, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

### Failure to Disclose Material Fact to Canadian Consumers in Violation of Section 5

29.     In numerous instances, in connection with the marketing, offering for sale, or sale of Defendants' "debt reduction" program to Canadian consumers, Defendants have represented, expressly or by implication, that Canadian consumers who purchase Defendants' "debt reduction" program will be charged a specific fee, typically between $690 and $899.

30.     In numerous instances in which Defendants have made the representation above, Defendants have failed to disclose, or to disclose adequately, to Canadian consumers, before charging consumers' credit cards, that the specified fee for their program is in U.S. rather than Canadian Dollars. Thus, Canadian consumers who authorize a fee of "$690" may later find that they have been charged $800 Canadian or more as a result of the currency exchange rate.

31.     Defendants' failure to disclose or disclose adequately the material information described in Paragraph 30, in light of the representation described in Paragraph 29, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## AND THE NATIONAL DO NOT CALL REGISTRY

32.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, in 1994. On August 16, 1995, the FTC adopted the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, which became effective on December 31, 1995. On January 29, 2003, the FTC amended the TSR. 68

1  Fed. Reg. 4580, 4669. On August 29, 2008, the FTC amended the TSR again. 73 Fed. Reg. 51164,

2  51204.

3      33.    Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," and

4  Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone calls" to

5  consumers, as those terms are defined in the TSR, 16 C.F.R. § 310.2(u), (z), (bb) and (cc).

6      34.    The TSR prohibits telemarketers and sellers from making any false or misleading

7  statement to induce any person to pay for goods or services. 16 C.F.R. § 310.3(a)(4).

8      35.    The TSR prohibits telemarketers and sellers from misrepresenting, directly or by

9  implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature,

10  or central characteristics of the goods or services that are the subject of a sales offer. 16 C.F.R.

11  § 310.3(a)(2)(iii).

12      36.    The TSR also prohibits sellers and telemarketers from failing to disclose truthfully in a

13  clear and conspicuous manner, before a customer pays for goods or services, the total purchase cost

14  and, if the seller or telemarketer makes a representation about a refund or cancellation policy, a

15  statement of all material terms and conditions of such policy. 16 C.F.R. § 310.3(a)(1)(i) and (iii).

16      37.    As of March 31, 2003, the TSR also prohibits any seller or telemarketer from

17  "[d]isclosing or receiving, for consideration, unencrypted consumer account numbers for use in

18  telemarketing." 16 C.F.R. § 310.4(a)(5).

19      38.    The TSR requires telemarketers in an outbound telephone call to disclose truthfully,

20  promptly, and in a clear and conspicuous manner, the following information:

21          A.    The identity of the seller;

22          B.    That the purpose of the call is to sell goods or services; and

23          C.    The nature of the goods or services.

24  16 C.F.R. § 310.4(d)(1), (2), and (3).

25      39.    Since December 1, 2008, the TSR has prohibited a telemarketer from engaging, and a

26  seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a

27  prerecorded message unless the message immediately discloses:

28          A.    The identity of the seller;

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1            B.      That the purpose of the call is to sell goods or services; and

2            C.      The nature of the goods or services.

3    16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

4        40.     The TSR also prohibits sellers and telemarketers from initiating an outbound telephone
5    call to any person when that person previously has stated that he or she does not wish to receive an
6    outbound telephone call made by or on behalf of the seller whose goods or services are being offered.
7    16 C.F.R. § 310.4(b)(1)(iii)(A).

8        41.     Since December 1, 2008, the TSR has prohibited a telemarketer from engaging, and a
9    seller from causing a telemarketer to engage, in initiating an outbound telephone call that delivers a
10   prerecorded message unless, immediately following the disclosures described in paragraph 39, the
11   prerecorded message discloses how the person called can assert a Do Not Call request pursuant to 16
12   C.F.R. § 310.4(b)(1)(iii)(A). The disclosure must state that the person called can assert the request by
13   using:

14           A.      an automated interactive voice and/or keypress-activated opt-out mechanism, in
15                   the case of a call that could be answered in person by a consumer; or

16           B.      a toll-free telephone number, in the case of a call that could be answered by an
17                   answering machine or voicemail service. The toll-free number must connect
18                   directly to an automated interactive voice or keypress-activated opt-out
19                   mechanism.

20   In either case, the opt-out mechanism must automatically add the number called to the seller's entity-
21   specific Do Not Call list and immediately disconnect the call once invoked. In the case of a call that
22   could be answered in person, the opt-out mechanism must be available for use at any time during the
23   message, and in the case of a call that could be answered by an answering machine or voicemail
24   service, the opt-out mechanism must be accessible at any time throughout the duration of the
25   telemarketing campaign. 16 C.F.R. § 310.4(b)(1)(v)(B)(ii)*(A)-(B).*

26       42.     In addition, the TSR, as amended in 2003, establishes a "do-not-call" registry (the
27   "National Do Not Call Registry" or "Registry"), maintained by the FTC, of consumers who do not
28   wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers

FEDERAL TRADE COMMISSION
915 Second Ave., Ste 2896
Seattle, Washington 98174
(206) 220-6350

1  on the Registry without charge either through a toll-free telephone call or over the Internet at

2  *www.donotcall.gov.*

3       43.    Since October 17, 2003, sellers and telemarketers have been prohibited from calling

4  numbers on the Registry. 16 C.F.R. § 310.4(b)(1)(iii)(B).

5       44.    Since January 29, 2004, sellers and telemarketers have been required to transmit or

6  cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier,

7  the name of the telemarketer, to any caller identification service in use by a recipient of a

8  telemarketing call, or, alternately, to transmit or cause to be transmitted the name of the seller on

9  behalf of which a telemarketing call is placed and the seller's customer service telephone number.

10  16 C.F.R. § 310.4(a)(7).

11       45.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c) and

12  Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or

13  deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act,

14  15 U.S.C. § 45(a).

15  <div align="center">**COUNT FOUR**</div>

16  <div align="center">**Misrepresentations and False and Misleading Statements in Violation of the TSR**</div>

17       46.    In numerous instances, in the course of telemarketing goods and services, Defendants

18  have misrepresented, expressly or by implication, that:

19            A.    Consumers who purchase Defendants' "debt reduction" program will have their

20                  credit card interest rates reduced substantially;

21            B.    Consumers who purchase Defendants' "debt reduction" program will save, in a

22                  short time, hundreds or thousands of dollars, or more than the amount of the fees

23                  consumers pay; and

24            C.    Consumers who purchase Defendants' "debt reduction" program will be able to

25                  pay off their debt three to five times faster without increasing their monthly

26                  payments.

27       47.    Defendants' acts and practices, as alleged in Paragraph 46 above, are deceptive

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98774
(206) 220-6350

1 | telemarketing acts or practices that violate Sections 310.3(a)(2)(iii) and 310.3(a)(4) of the TSR,

2 | 16 C.F. R. §§ 310.3(a)(2)(iii) and 310.3(a)(4).

3 | <div align="center">**COUNT FIVE**</div>

4 | <div align="center">**Failure to Disclose Material Refund Conditions in Violation of the TSR**</div>

5 | 48.     In numerous instances, in the course of telemarketing goods and services, Defendants

6 | have represented, expressly or by implication, that consumers who purchase Defendants' "debt

7 | reduction" program are guaranteed a full refund if they do not achieve the amount of savings

8 | represented by Defendants.

9 | 49.     In numerous instances in which Defendants have made the representation above,

10 | Defendants have failed to disclose, or to disclose adequately, to consumers, before charging

11 | consumers' credit cards, that:

12 |         A.      Consumers who do not achieve the guaranteed savings as a result of Defendants

13 |                 negotiating reduced interest rates with consumers' creditors may be denied a full

14 |                 refund if the amount of savings guaranteed potentially can be achieved by

15 |                 following a multi-year, accelerated debt payment schedule provided to

16 |                 consumers by Defendants;

17 |         B.      Defendants may impose other conditions on the refund guarantee, such as

18 |                 requiring the refund claim be made within a minimum or maximum period of

19 |                 time after the consumer was charged; and

20 |         C.      If the consumer requests a refund, and any refund is given, Defendants may

21 |                 retain 12% or more of the amount paid by the consumer.

22 | 50.     Defendants' acts and practices as alleged in Paragraphs 48-49 are deceptive

23 | telemarketing acts or practices that violate Section 310.3(a)(1)(iii) of the TSR, 16 C.F.R.

24 | § 310.3(a)(1)(iii).

25 | <div align="center">**COUNT SIX**</div>

26 | <div align="center">**Failure to Disclose Purchase Cost to Canadian Consumers in Violation of the TSR**</div>

27 | 51.     In numerous instances, in connection with the marketing, offering for sale, or sale of

28 | Defendants' "debt reduction" program to Canadian consumers, Defendants have represented, expressly

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    or by implication, that Canadian consumers who purchase Defendants' "debt reduction" program will

2    be charged a specific fee, typically between $690 and $899.

3        52.     In numerous instances in which Defendants have made the representation above,

4    Defendants have failed to disclose, or to disclose adequately, to consumers, before charging

5    consumers' credit cards, that the specified fee for their program is in U.S. rather than Canadian

6    Dollars. Thus, Canadian consumers who authorize a fee of "$690" may later find that they have been

7    charged $800 Canadian or more as a result of the currency exchange rate.

8        53.     Defendants' acts and practices as alleged in Paragraphs 51-52 are deceptive

9    telemarketing acts or practices that violate Section 310.3(a)(1)(i) of the TSR, 16 C.F.R.

10    § 310.3(a)(1)(i).

11                          **COUNT SEVEN**

12                **Violating the National Do Not Call Registry**

13        54.     In numerous instances, in connection with telemarketing, Defendants have engaged, or

14    caused a telemarketer to engage, in initiating an outbound telephone call to a person's telephone

15    number on the National Do Not Call Registry in violation of Section § 310.4(b)(1)(iii)(B) of the TSR,

16    16 C.F.R. § 310.4(b)(1)(iii)(B).

17                          **COUNT EIGHT**

18                **Failing to Honor Do Not Call Requests**

19        55.     In numerous instances, in connection with telemarketing, Defendants have engaged, or

20    caused a telemarketer to engage, in initiating an outbound telephone call to a person who previously

21    has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of

22    Defendants, in violation of the TSR, 16 C.F.R. § 310.4(b)(iii)(A).

23                          **COUNT NINE**

24              **Failing to Transmit Caller Identification**

25        56.     In numerous instances, in connection with telemarketing, Defendants have failed to

26    transmit or cause to be transmitted the telemarketer's telephone number, and, when made available by

27    the telemarketer's carrier, the name of the telemarketer, or, in the alternative, the seller's name and

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-0350

1 customer service telephone number, to caller identification services in use by recipients of

2 telemarketing calls, in violation of Section 310.4(a)(7) of the TSR, 16 C.F.R. § 310.4(a)(7).

3                                **COUNT TEN**

4               **Failing to Make Required Oral Disclosures**

5     57.   In numerous instances, in the course of telemarketing goods and services, Defendants

6 have, in outbound telephone calls, failed to disclose promptly and in a clear and conspicuous manner

7 to the person receiving the call:

8       A.   The identity of the seller;

9       B.   That the purpose of the call is to sell goods or services; and

10       C.   The nature of the goods or services.

11     58.   Defendants' acts and practices as alleged in Paragraph 57 are abusive telemarketing acts

12 or practices that violate the TSR, 16 C.F.R. § 310.4(d)(1), (2), and (3).

13                       **COUNT ELEVEN**

14          **Initiating Unlawful Prerecorded Messages**

15     59.   In numerous instances, on or after December 1, 2008, in the course of telemarketing

16 goods and services, Defendants have initiated, or caused a telemarketer to initiate, outbound telephone

17 calls delivering prerecorded messages that do not promptly provide the disclosures required by

18 § 310.4(d) of the TSR and the further disclosures required by § 310.4(b)(1)(v)(B)*(ii)(A)-(B)*.

19     60.   Defendants' acts or practices as alleged in Paragraph 59 are abusive telemarketing acts

20 or practices that violate the TSR, 16 C.F.R. § 310.4(b)(1)(v)(B)*(ii)*.

21               **CONSUMER INJURY**

22     61.   Consumers in the United States and elsewhere have suffered and will suffer injury as a

23 result of Defendants' violations of the FTC Act and the TSR. Absent injunctive relief by this Court,

24 Defendants are likely to continue to injure consumers and harm the public interest.

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    **THIS COURT'S POWER TO GRANT RELIEF**

2    62.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant

3    injunctive and such other relief as the Court may deem appropriate to halt and redress violations of the

4    FTC Act. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including

5    rescission of contracts and restitution, and the disgorgement of monies, to prevent and remedy any

6    violation of any provision of law enforced by the FTC.

7    63.    Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the Telemarketing Act,

8    15 U.S.C. § 6105(b), authorize this Court to grant such relief as the Court finds necessary to redress

9    injury to consumers or other persons resulting from Defendants' violations of the TSR, including the

10   rescission and reformation of contracts and the refund of money.

11   64.    This Court, in the exercise of its equitable jurisdiction, may award other ancillary relief

12   to remedy injury caused by the Defendants' law violations.

13   **PRAYER FOR RELIEF**

14   WHEREFORE, plaintiff Federal Trade Commission, pursuant to Sections 13(b) and 19 of the

15   FTC Act, 15 U.S.C. §§ 53(b) and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C.

16   § 6105(b), and the Court's own equitable powers, requests that the Court:

17   a.    Award plaintiff such preliminary injunctive and ancillary relief as may be

18   necessary to avert the likelihood of consumer injury during the pendency of this

19   action and to preserve the possibility of effective final relief, including, but not

20   limited to, temporary and preliminary injunctions and an order freezing assets;

21   b.    Permanently enjoin Defendants from violating the FTC Act and the TSR, as

22   alleged herein;

23   c.    Award such relief as the Court finds necessary to redress injury to consumers

24   resulting from Defendants' violations of the FTC Act and the TSR, including,

25   but not limited to, rescission or reformation of contracts, restitution, refund of

26   monies paid, and the disgorgement of ill-gotten monies; and

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   d.   Award plaintiff the costs of investigating and bringing this action and

        reasonable attorneys' fees, as well as such other and additional relief as the

        Court may determine to be just and proper.

Dated: June 25, 2009                    Respectfully Submitted,


                                        DAVID C. SHONKA
                                        Acting General Counsel

                                        CHARLES A. HARWOOD
                                        Regional Director

                                        Maxine R Stansell

                                        MAXINE R. STANSELL # 9418
                                        ELEANOR DURHAM Member MD Bar
                                        Attorneys for Plaintiff Federal Trade Commission

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

4th

document

1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8 AT TACOMA

9 | FEDERAL TRADE COMMISSION,

10 Plaintiff,   Case No. C09-5380RBL

11 v.

12 MCS PROGRAMS, LLC, a Washington   **TEMPORARY RESTRAINING**
Limited Liability Company, also doing   **ORDER WITH ASSET FREEZE,**

13 business as Mutual Consolidated Savings;   **APPOINTMENT OF TEMPORARY**
UNITED SAVINGS CENTER, INC., a   **RECEIVER, IMMEDIATE ACCESS**

14 Washington corporation, also doing business   **TO BUSINESS PREMISES, LIMITED**
as Mutual Consolidated Savings; USC   **EXPEDITED DISCOVERY, AND AN**

15 PROGRAMS, LLC, a Washington Limited   **ORDER TO SHOW CAUSE WHY A**
Liability Company, also doing business as   **PRELIMINARY INJUNCTION**

16 Mutual Consolidated Savings; PAUL   **SHOULD NOT ISSUE**
MORRIS THOMPSON, individually and as an

17 officer of MCS Programs, LLC, United
Savings Center, Inc., and USC Programs, LLC;

18 and MIRANDA CAVENDER, individually
and as a manager of MCS Programs, LLC,

19 United Savings Center, Inc., and USC
Programs, LLC,

20

21 Defendants.

22

23

24

25

26

27

28

Proposed Temporary Restraining Order

1      Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), pursuant to Sections 13(b)

2    and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, has filed a

3    Complaint for Injunctive and Other Equitable Relief, including consumer redress, and an *Ex Parte*

4    Application for Temporary Restraining Order, with Asset Freeze, Appointment of a Receiver, Order

5    Granting Immediate Access, Order Permitting Limited Expedited Discovery, and Order to Show Cause

6    Why Preliminary Injunction Should Not Issue, and Supporting Memorandum ("Application for

7    TRO").

8                  **FINDINGS OF FACT**

9      The Court has considered the Complaint, *Ex Parte* Application for TRO, the Memorandum of

10   Points and Authorities with supporting Exhibits, and all other papers filed herein.  It appears to the

11   satisfaction of the Court that:

12     1.    This Court has jurisdiction over the subject matter of the case, and there is good cause

13   to believe it will have jurisdiction over all parties.

14     2.    Venue lies properly with this Court.

15     3.    There is good cause to believe that Defendants:

16           a.    MCS Programs, LLC, a Washington Limited Liability Company, also doing

17               business as Mutual Consolidated Savings;

18           b.    United Savings Center, Inc., a Washington corporation, also doing business as

19               Mutual Consolidated Savings;

20           c.    USC Programs, LLC, a Washington Limited Liability Company, also doing

21               business as Mutual Consolidated Savings;

22           d.    Paul Morris Thompson, individually and as an officer of MCS Programs, LLC,

23               United Savings Center, Inc., and USC Programs, LLC; and

24           e.    Miranda Cavender, individually and as a manager of MCS Programs, LLC,

25               United Savings Center, Inc., and USC Programs, LLC, Merchant Processing,

26               Inc.,

27          have engaged in and are likely to engage in acts and practices that violate Section 5(a)

28          of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"),

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1          16 C.F.R. Part 310, and that the Commission is likely to prevail on the merits of this

2          action.

3      4.      There is good cause to believe that immediate and irreparable harm will result from

4 Defendants' ongoing violations of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C.

5 § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, absent entry of this

6 Temporary Restraining Order ("Order").

7      5.      There is good cause to believe that immediate and irreparable damage to the Court's

8 ability to grant effective final relief for consumers in the form of monetary redress will occur from the

9 sale, transfer, assignment, or other disposition or concealment by Defendants of their assets or records

10 unless they are immediately restrained and enjoined by Order of this Court.

11      6.      There is thus good cause for issuing this Order without prior notice to the Defendants of

12 the Commission's application, pursuant to Federal Rule of Civil Procedure 65(b).

13      7.      Good cause exists for the appointment of a temporary receiver for Defendants MCS

14 Programs, LLC; United Savings Center, Inc.; and USC Programs, LLC.

15      8.      Weighing the equities and considering the Commission's likelihood of success in its

16 causes of action, this Order is in the public interest.

17      9.      No security is required of any agency of the United States for the issuance of a

18 restraining order. Fed. R. Civ. P. 65(c).

19                        **ORDER**

20                        **Definitions**

21      1.      **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or

22 personal property including, but not limited to, chattel, goods, instruments, equipment, fixtures,

23 general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts,

24 credits, receivables (as those terms are defined in the Uniform Commercial Code), and all cash,

25 wherever located.

26      2.      **"Assisting others"** means providing any of the following goods or services to another

27 person: (a) serving as an officer, director, or consultant; (b) performing customer service functions,

28 including, but not limited to, receiving or responding to customer complaints; (c) formulating or

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1   providing, or arranging for the formulation or provision of, any script or any other material for

2   communicating with customers or potential customers; (d) providing names of, or assisting in the

3   generation of contacts to, potential customers, including, but not limited to, arranging for the

4   automated delivery of messages to potential customers; (e) performing marketing services of any kind;

5   or (f) providing any other substantial help or aid, while knowing or consciously avoiding knowing that

6   the person receiving assistance is engaged in an act or practice that is prohibited by this Order.

7       3.      **"Clearly and conspicuously"** means:

8               a.   If presented in writing, the information shall be in a type size and location

9                    sufficient for an ordinary consumer to read and comprehend it, and shall be

10                   disclosed in a manner that would be easily recognizable and understandable in

11                   language and syntax to an ordinary consumer.  If the information is contained in

12                   a multi-page print document, the disclosure shall appear on the first page.

13              b.   If presented orally, the information shall be disclosed in a volume, cadence and

14                   syntax sufficient for an ordinary consumer to hear and comprehend.

15              c.   Nothing contrary to any information disclosed shall be imparted at or near the

16                   time of the disclosure.  Further, a subsequent disclosure made orally or in

17                   writing only limits or qualifies a prior disclosure and cannot cure a false claim.

18      4.      **"Consumer"** means an actual or potential purchaser or customer, regardless of whether

19   that person is a corporation, limited liability corporation, partnership, association, other business

20   entity, or natural person.

21      5.      **"Corporate Defendants"** means MCS Programs, LLC, also d/b/a Mutual Consolidated

22   Savings; United Savings Center, Inc, also d/b/a Mutual Consolidated Savings; and USC Programs,

23   LLC, also d/b/a Mutual Consolidated Savings, individually, collectively, or in any combination, and

24   each of them, by whatever names each might be known, whether acting directly or through any

25   corporation, limited liability company, subsidiary, division,  assign, agent, proxy, nominee, or other

26   device.

27      6.      **"Customer"** means any person who is or may be required to pay for goods or services

28   offered through telemarketing.

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1      7.    **"Debt Reduction" Product, Service or Program** means any product, service, or

2    program that includes:

3             a.    Acting or offering or attempting to act as an intermediary between a debtor and

4                   his or her creditors for the purpose of settling, negotiating, or in any way

5                   altering the interest rate or other terms of payment of any debt of a debtor, or

6                   otherwise arranging for alteration of the interest rate or other terms of payment

7                   of any debt of a debtor;

8             b.    Showing or purporting to show consumers how to restructure, consolidate,

9                   liquidate, accelerate, settle, or alter the terms of payment of any debt of a debtor;

10           c.    The receipt or scheduled receipt of a debtor's monies, or evidences thereof, for

11                   the purpose of distribution among certain specified creditors in payment, or

12                   partial payment, of the debtor's obligations; or

13           d.    Exercising direct or indirect control, or arranging for the exercise of such

14                   control, over funds of a consumer for the purpose of distributing payments to or

15                   among one or more creditors of the consumer in full or partial payment of the

16                   consumer's obligation.

17      8.    **"Defendants"** means MCS Programs, LLC, United Savings Center, Inc., USC

18    Programs, LLC, Paul Morris Thompson, and Miranda Cavender, individually, collectively, or in any

19    combination, and each of them, by whatever names each might be known, whether acting directly or

20    through any corporation, limited liability company, subsidiary, division, assign, agent, proxy,

21    nominee, or other device.

22      9.    **"Document"** is synonymous in meaning and equal in scope to the usage of the term in

23    Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs,

24    audio and video recordings, computer records, and other data compilations from which information

25    can be obtained and translated, if necessary, through detection devices into reasonably usable form. A

26    draft or non-identical copy is a separate document within the meaning of the term.

27      10.    **"Established business relationship"** means a relationship between a seller and a

28    consumer based on: (a) the consumer's purchase, rental, or lease of the seller's goods or services or a

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  financial transaction between the consumer and seller, within the eighteen months immediately

2  preceding the date of a telemarketing call; or (b) the person's inquiry or application regarding a

3  product or service offered by the seller, within the three months immediately preceding the date of a

4  telemarketing call.

5       11.    **"Financial institution"** means any bank, savings and loan institution, credit union or

6  any financial depository of any kind, including but not limited to any brokerage house, trustee, broker-

7  dealer, escrow agent, title company, commodity trading company, precious metal dealer, commercial

8  check cashing facility, or any entity or person that holds, controls, or maintains custody of any account

9  or asset of any Defendant.

10      12.    **"Individual Defendants"** means Paul Morris Thompson and Miranda Cavender,

11  individually, collectively, or in any combination, and each of them, by whatever names each might be

12  known, whether acting directly or through any corporation, limited liability company, subsidiary,

13  division,  assign, agent, proxy, nominee, or other device.

14      13.    **"Material"** means likely to affect a person's choice of, or conduct regarding, goods or

15  services.

16      14.    **"National Do Not Call Registry"** means the National Do Not Call Registry maintained

17  by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

18      15.    **"Outbound telephone call"** means a telephone call initiated by a telemarketer to

19  induce the purchase of goods or services or to solicit a charitable contribution.

20      16.    **"Person"** means any individual, group, unincorporated association, limited or general

21  partnership, corporation, or other entity.

22      17.    **"Receiver"** means the temporary receiver appointed in this Order.  The term

23  "Receiver" also includes any deputy receivers as may be named by the temporary receiver.

24      18.    **"Receivership Defendants"** means MCS Programs, LLC; United Savings Center, Inc.;

25  and USC Programs, LLC, and their affiliates and subsidiaries, and any other corporations or businesses

26  under the control of any of them.

27

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1     19.    **"Seller"** means any person who, in connection with a telemarketing transaction,

2    provides, offers to provide, or arranges for others to provide goods or services to the customer in

3    exchange for consideration.

4     20.    **"Telemarketer"** means any person who, in connection with telemarketing, initiates or

5    receives telephone calls to or from a customer or donor.

6     21.    **"Telemarketing"** means a plan, program, or campaign which is conducted to induce

7    the purchase of goods or services or a charitable contribution, by use of one or more telephones and

8    which involves more than one interstate telephone call. The term does not include the solicitation of

9    sales through the mailing of a catalog which: contains a written description or illustration of the goods

10    or services offered for sale; includes the business address of the seller; includes multiple pages of

11    written material or illustrations; and has been issued not less frequently than once a year, when the

12    person making the solicitation does not solicit customers by telephone but only receives calls initiated

13    by customers in response to the catalog and during those calls takes orders only without further

14    solicitation. For purposes of the previous sentence, the term "further solicitation" does not include

15    providing the customer with information about, or attempting to sell, any other item included in the

16    same catalog which prompted the customer's call or in a substantially similar catalog.

17     22.    **"Telemarketing Sales Rule"** or **"Rule"** means the FTC Rule entitled "Telemarketing

18    Sales Rule," 16 C.F.R. Part 310.

19                             **CONDUCT PROHIBITIONS**

20                    **I. Prohibition Against Material Misrepresentations**

21        **IT IS HEREBY ORDERED** that Defendants, their successors, assigns, officers, agents,

22    servants, employees, and attorneys, and those persons or entities in active concert or participation with

23    any of them who receive actual notice of this Order by personal service or otherwise, whether acting

24    directly or through any corporation, subsidiary, division, or other device, in connection with the

25    advertising, marketing, promoting, offering for sale, or sale of any debt reduction product, service, or

26    program, are hereby temporarily restrained and enjoined from misrepresenting, or assisting others in

27    misrepresenting, expressly or by implication, orally or in writing, any fact material to a consumer's

28

Proposed Temporary Restraining Order      -7-

1 decision to buy or accept the product, service, or program, including, but not limited to,

2 misrepresenting that:

3      A.    Consumers who purchase Defendants' products, services, or programs will have their

4            credit card interest rates reduced substantially;

5      B.    Consumers who purchase Defendants' products, services, or programs will save, in a

6            short time, hundreds or thousands of dollars or more than they will pay for the products,

7            services, or programs;

8      C.    Consumers who purchase Defendants' products, services, or programs will be able to

9            pay off their debt three to five times faster without increasing their monthly payments;

10            and

11      D.    Any material term, condition, or limitation of a refund, cancellation, exchange, or

12            repurchase policy.

13                       **II. Prohibition Against Material Omissions**

14      **IT IS FURTHER ORDERED** that Defendants, their successors, assigns, officers, agents,

15 servants, employees, and attorneys, and those persons or entities in active concert or participation with

16 any of them who receive actual notice of this Order by personal service or otherwise, whether acting

17 directly or through any corporation, subsidiary, division, or other device, in connection with the

18 advertising, marketing, promoting, offering for sale, or sale of any debt reduction product, service, or

19 program, are hereby temporarily restrained and enjoined from failing to disclose, clearly and

20 conspicuously, prior to the time when a consumer purchases such product, service, or program from

21 Defendants, all information material to a consumer's decision to buy the product, service, or program,

22 including but not limited to failing to disclose the following, if true:Consumers who do not achieve the

23 guaranteed savings as a result of Defendants negotiating reduced interest rates with consumers'

24 creditors may be denied a full refund if the amount of savings guaranteed potentially can be achieved

25 by following a multi-year, accelerated debt payment schedule provided to consumers by Defendants;

26      A.    Defendants may impose other conditions on their refund guarantee, such as requiring

27            the refund claim be made within a minimum or maximum period of time after the

28            consumer was charged;

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1      B.    Defendants may retain 12% or more of any refund requested by consumer and given by

2              Defendants; and

3      C.    Fees quoted to Canadian consumers are stated in U.S. Dollars.

4           **III. Prohibition Against Violations of the Telemarketing Sales Rule**

5      **IT IS FURTHER ORDERED** that Defendants, their successors, assigns, officers, agents,

6  servants, employees, and attorneys, and those persons or entities in active concert or participation with

7  any of them who receive actual notice of this Order by personal service or otherwise, whether acting

8  directly or through any corporation, subsidiary, division, or other device, in connection with

9  telemarketing, are hereby temporarily restrained and enjoined from violating or assisting others to

10  violate any provision of the Telemarketing Sales Rule, 16 C.F.R. Part 310, including, but not limited

11  to:

12      A.    Making any false or misleading statement to induce any person to pay for goods or

13              services; in violation of Sections 310.3(a)(2)(iii) and 310.3(a)(4) of the TSR, 16 C.F.R.

14              §§ 310.3(a)(2)(iii) and 310.3(a)(4).

15      B.    Misrepresenting, directly or by implication, any material aspect of the performance,

16              efficacy, nature, or central characteristics of goods or services that are the subject of the

17              sales offer, in violation of Section 310.3(a)(2)(iii) of the Rule, 16 C.F.R.

18              § 310.3(a)(2)(iii);

19      C.    Failing to disclose truthfully, and in a clear and conspicuous manner, before a consumer

20              pays for goods or services, all the material terms and conditions of a refund or

21              cancellation policy, if the seller or telemarketer has such a policy and informs the

22              consumer about such policy, in violation of Section 310.3(a)(1)(iii) of the Rule, 16

23              C.F.R. § 310.3(a)(1)(iii);

24      D.    If the seller has a policy against cancellations, refunds, exchanges, or repurchases,

25              failing to disclose truthfully, and in a clear and conspicuous manner, before a consumer

26              pays for goods or services, that this is the seller's policy, in violation of Section

27              310.3(a)(1)(iii) of the Rule, 16 C.F.R. § 310.3(a)(1)(iii);

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    E.   Initiating or causing a telemarketer to initiate an outbound telephone call that fails to

2         disclose truthfully, promptly, and in a clear and conspicuous manner, the following

3         information:

4         1.    the identity of the seller;

5         2.    that the purpose of the call is to sell goods or services; and

6         3.    the nature of the goods or services,

7         in violation of Section 310.4(d)(1), (2), and (3) of the Rule, 16 C.F.R. § 310.4(d)(1), (2),

8         and (3);

9    F.   Initiating, or causing a telemarketer to initiate, an outbound telephone call that delivers

10        a prerecorded message that fails to immediately disclose the following information:

11        1.    the identity of the seller;

12        2.    that the purpose of the call is to sell goods or services; and

13        3.    the nature of the goods or services,

14        in violation of Section 310.4(b)(1)(v)(B)(ii) of the Rule, 16 C.F.R.

15        § 310.4(b)(1)(v)(B)(ii);

16   G.   Initiating, or causing a telemarketer to initiate, an outbound telephone call that delivers

17        a prerecorded message unless, immediately following the disclosures required by

18        paragraph F, the prerecorded message discloses:

19        1.    in the case of a call that could be answered in person by a consumer, that the

20              person called can use an automated interactive voice and/or keypress-activated

21              opt-out mechanism that automatically adds the number called to the seller's

22              entity-specific Do Not Call List and immediately disconnects the call, and

23        2.    in the case of a call that could be answered by an answering machine or

24              voicemail service, provides a toll-free telephone number that the consumer can

25              call and that allows the consumer to have his or her telephone number

26              automatically added to the seller's entity-specific Do Not Call list, that

27              immediately thereafter disconnects the call, and that remains available

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

| | | |
|---|---|---|
| 1 | | throughout the duration of the telemarketing campaign, in violation of Section |
| 2 | | 310.4(b)(1)(v)(B)(ii)(*A-B*), 16 C.F.R. § 310.4(b)(1)(v)(B)(ii)(*A-B*); |
| 3 | H. | Initiating, or causing a telemarketer to initiate, an outbound telephone call to any |
| 4 | | person when that person previously has stated that he or she does not wish to receive an |
| 5 | | outbound telephone call made by or on behalf of the seller whose goods or services are |
| 6 | | being offered, in violation of Section 310.4(b)(1)(iii)(A), 16 C.F.R. § |
| 7 | | 310.4(b)(1)(iii)(A); |
| 8 | I. | Failing to transmit or cause to be transmitted the telephone number, and, when made |
| 9 | | available by the telemarketer's carrier, the name of the telemarketer, to any caller |
| 10 | | identification service in use by a recipient of a telemarketing call, or, alternatively, to |
| 11 | | transmit or cause to be transmitted the name of the seller on behalf of which a |
| 12 | | telemarketing call is placed and the seller's customer service telephone number, in |
| 13 | | violation of Section 310.4(a)(7), 16 C.F.R. § 310.4(a)(7); and |
| 14 | J. | Initiating, or causing others to initiate, an outbound telephone call to a person's |
| 15 | | telephone number on the National Do Not Call Registry, in violation of Section |
| 16 | | 310.4(b)(1)(iii)(B) of the Rule, 16 C.F.R. § 310.4(b)(1)(iii)(B). |

17 *Provided, however,* that if the Commission promulgates rules that modify or supercede the

18 Telemarketing Sales Rule, in whole or in part, Defendants shall comply fully and completely with all

19 applicable requirements thereof, on and after the effective date of any such rules.

20 **ASSET PROVISIONS**

21 **IV. *Asset* Freeze**

22 **IT IS FURTHER ORDERED** that:

23     A.   Defendants, and their successors, assigns, officers, agents, servants, employees, and

24         attorneys, and those persons or entities in active concert or participation with any of

25         them who receive actual notice of this Order by personal service or otherwise, whether

26         acting directly or through any corporation, subsidiary, division, or other device, in

27         connection with telemarketing, are hereby temporarily restrained and enjoined from is

28         hereby temporarily restrained and enjoined from:

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

| | | 1. | Transferring, liquidating, converting, encumbering, pledging, loaning, selling, |
|1| | | |

1.  Transferring, liquidating, converting, encumbering, pledging, loaning, selling,
    concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a
    lien or security interest or other interest in, or otherwise disposing of any funds,
    real or personal property, accounts, contracts, consumer lists (including lists of
    consumer names, telephone numbers, addresses, or account numbers, or other
    consumer data), shares of stock, or other assets, or any interest therein, wherever
    located, that are: (a) owned or controlled by any Defendant, in whole or in part;
    (b) in the actual or constructive possession of any Defendant; or (c) owned,
    controlled by, or in the actual or constructive possession of any corporation,
    partnership, or other entity directly or indirectly owned, managed, or controlled
    by any Defendant, including, but not limited to any assets held by or for, or
    subject to access by, any Defendant, at any bank or savings and loan institution,
    or with any broker-dealer, escrow agent, title company, commodity trading
    company, precious metals dealer, or other financial institution or depository of
    any kind;

2.  Opening or causing to be opened any safe deposit boxes titled in the name of
    any Defendant, or subject to access by any of them;

3.  Incurring charges or cash advances on any credit card issued in the name, singly
    or jointly, of any Defendant; and

4.  Incurring liens or other encumbrances on real property, personal property or
    other assets in the name, singly or jointly, of any Defendant.

B.  Notwithstanding the above, the Individual Defendants may, by further order of the
    Court or by written agreement of the Commission, pay from their personal funds
    reasonable, usual, ordinary, and necessary living expenses and attorney's fees.

Proposed Temporary Restraining Order          - 12 -

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1
2

**V.  Retention of Assets and Documents by**
**Financial Institutions and Other Third Parties**

3    IT IS FURTHER ORDERED that, effective immediately upon notification of this Order by

4  letter from Plaintiff, delivered by any means including facsimile transmission, and pending

5  determination of Plaintiff's request for a preliminary injunction, any bank, savings and loan institution,

6  credit union, financial institution, brokerage house, escrow agent, money market or mutual fund, title

7  company, commodity trading company, common carrier, storage company, trustee, commercial mail

8  receiving agency, mail holding or forwarding company, or any other person, partnership, corporation,

9  legal or business entity, or person that holds, controls or maintains custody of any account or asset

10  belonging to, or titled in the name of, any Defendant or belonging to, or titled in the name of, any

11  corporation, partnership or other entity directly or indirectly owned, managed  or controlled by, in

12  whole or in part, any Defendant, or to which they are a signatory, or which is held on behalf of, or for

13  the benefit of, any Defendant, individually or jointly, or that has held, controlled or maintained custody

14  of any such account or asset at any time since January 1, 2005, shall:

15    A.    Prohibit Defendants and their agents, servants, employees, attorneys, and all persons or

16            entities directly or indirectly under their control, or in common control with them, from

17            withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing,

18            dissipating, converting, selling, or otherwise disposing of any such account or asset

19            except:

20        1.    As directed by further order of the Court; or

21        2.    By written agreement of the Commission;

22    B.    Maintain the status quo of any such account or asset and not withdraw, remove, assign,

23            transfer, pledge, encumber, disburse, dissipate, convert, sell, or otherwise dispose of

24            any such account or asset except:

25        1.    As directed by further order of the Court; or

26        2.    By written agreement of the Commission;

27    C.    Deny Defendants and their agents, servants, employees, attorneys, and all persons or

28            entities directly or indirectly under their control, or in common control with them,

Proposed Temporary Restraining Order              - 13 -

1    unless accompanied by counsel for the Federal Trade Commission, access to any safe

2    deposit box that is:

3         1.    Titled in the name of any Defendant or their affiliates or subsidiaries, either

4               individually or jointly; or

5         2.    Otherwise subject to access by any Defendant or their affiliates or subsidiaries;

6    D.   Provide counsel for the Commission, within five business days of receiving a copy of

7         this Order, a sworn statement setting forth:

8         1.    The identification number of each such account or asset belonging to or titled in

9               the name of any Defendant or to which any Defendant is a signatory, or which is

10              held on behalf of, or for the benefit of, any Defendant;

11        2.    The balance of each such account, or a description of the nature and value of

12              such asset as of the time this Order is served, and, if any asset has been removed

13              or transferred within the last 90 days, the date removed or transferred, the total

14              funds removed or transferred, and the name of the person or entity to whom

15              such account or other asset was remitted; and

16        3.    The identification of any safe deposit box that is titled in the name, individually

17              or jointly, of any Defendant or is otherwise subject to access by any Defendant;

18              and

19   E.   Upon the Commission's request, promptly provide the Commission with copies of all

20        records or other documentation pertaining to such account or asset including, without

21        limitation, originals or copies of account applications, account statements, signature

22        cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit

23        and credit instruments or slips, currency transaction reports, 1099 forms, and safe

24        deposit box logs.

### VI.  Repatriation of Assets

25

26   **IT IS FURTHER ORDERED** that within five (5) business days following service of this

27   Order, Defendants shall:

28   A.   Repatriate to the United States all funds, documents or assets in foreign countries held:

1                 (1) by them; (2) for their benefit; or (3) under their direct or indirect control, jointly or

2                 singly;

3       B.     The same business day as any repatriation under Paragraph VI.A above:

4               1.     notify counsel for Plaintiffs of the name and location of the financial institution

5                   or other entity that is the recipient of such funds, documents or assets; and

6               2.     serve this Order on any such financial institution or other entity;

7       C.     Provide Plaintiffs with a full accounting of all funds, documents, and assets outside of

8               the territory of the United States held: (1) by them; (2) for their benefit; or (3) under

9               their direct or indirect control, jointly or singly; and

10      D.     Hold and retain all repatriated funds, documents, and assets and prevent any transfer,

11               disposition or dissipation whatsoever of any such assets or funds.

12

13                          **RECEIVERSHIP PROVISIONS**

14                  **VII. Appointment of Temporary Receiver**

15         **IT IS FURTHER ORDERED** that Michael A. Grassmueck is appointed Temporary

16 Receiver for the Receivership Defendants, with the full power of an equity receiver. The Receiver

17 shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this

18 Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all

19 Rules of this Court governing receivers. It is understood, given the nature of this assignment, that the

20 Receiver may conclude that there are insufficient assets in the receivership or that other factors warrant

21 withdrawal of the Receiver in accordance with Paragraph XVII below.

22

23           **VIII. Access to Receivership Defendants' Business Premises**

24         **IT IS FURTHER ORDERED** that the Receiver and his or her representatives and agents shall

25 have immediate access to any business premises of the Receivership Defendants, and immediate access

26 to any other location where the Receivership Defendants have conducted business and where property

27 or business records are likely to be located. Such business premises locations specifically include, but

28 are not limited to, the offices and facilities of one or more of the Receivership Defendants at 1215

FEDERAL TRADE COMMISSION
915 Second Ave., Su. 2896
Seattle, Washington 98174
(206) 220-6350

1   Earnest S. Brazill Street, Building 33, Tacoma, Washington 98405; and any storage facility the
2   Receiver learns is being used to store records of Receivership Defendants. .

3      A.   The purpose of such access is to implement and carry out the Receiver's duties set forth
4             in Paragraph IX, and to inspect and inventory all of the Receivership Defendants'
5             property, assets and documents and inspect and copy any documents relevant to this
6             action. The Receiver and those specifically designated by the Receiver shall have the
7             right to remove the above-listed documents from those premises in order that they may
8             be inspected, inventoried, and copied.

9      B.   In connection with gaining access to and securing the Receivership Defendants'
10            business premises, the Receiver is authorized to use the assistance of law enforcement
11            officers, including, without limitation, those from the Federal Bureau of Investigation
12            and the Tacoma Police Department, as the Receiver deems necessary to effect service
13            and to implement peacefully the provisions of this Order.

14     C.   The Receiver shall allow the Commission's representatives, agents, and assistants, as
15            well as Defendants and their representatives, reasonable access to the premises of the
16            Receivership Defendants. The purpose of this access shall be to inspect and copy any
17            and all books, records, accounts, and other property, including computer data, owned by
18            or in the possession of the Receivership Defendants.

19     D.   The Receiver is authorized to provide continued access to the Receivership Defendants'
20            business premises to law enforcement officers, as he deems fit; and to refer to those law
21            enforcement officers any documents or information that may appear to be relevant to
22            their duties.

23                      **IX. Receivership Duties**
24  **IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the
25  following:

26     A.   Assume full control of the Receivership Defendants by removing, as the Receiver
27            deems necessary or advisable, any director, officer, independent contractor, employee
28

Proposed Temporary Restraining Order    - 16 -

1    or agent of the Receivership Defendants, including any Defendant, from control of,

2    management of, or participation in, the affairs of the Receivership Defendants;

3  B.  Take exclusive custody, control, and possession of all assets and documents of, or in the

4    possession, custody or under the control of, the Receivership Defendants, wherever

5    situated, including without limitation all paper documents and all electronic data and

6    devices that contain or store electronic data including but not limited to computers,

7    laptops, data storage devices, back-up tapes, DVDs, CDs, and thumb drives and all

8    other external storage devices and, as to equipment in the possession or under the

9    control of the Individual Defendants, all PDAs, smart phones, cellular telephones, and

10    similar devices issued or paid for by Receivership Defendants. The Receiver shall be

11    deemed to be the authorized responsible person to act on behalf of the Receivership

12    Defendants and, subject to further order of the Court, shall have the full power and

13    authority to take all corporate actions, including but not limited to, the filing of a

14    petition for bankruptcy as the authorized responsible person as to each of the

15    Receivership Defendants, dissolution of the Receivership Defendants, and sale of the

16    Receivership Defendants. The Receiver shall have full power to divert mail and to sue

17    for, collect, receive, take in possession, hold, and manage all assets and documents of

18    the Receivership Defendants and other persons or entities whose interests are now held

19    by or under the direction, possession, custody or control of the Receivership

20    Defendants; *provided, however*, that the Receiver shall seek further authority from the

21    Court, after providing notice to the Plaintiff before attempting to collect any debt from a

22    consumer if the Receiver believes the debt was induced by unfair or deceptive practices,

23    including, without limitation, those identified by the FTC in this matter whether in the

24    Complaint or in subsequent filings;

25  C.  Take all steps necessary to secure the business premises of the Receivership Defendants

26    including, but not limited to, all such premises located at 1215 Earnest S. Brazill Street,

27    Tacoma, Washington 98405. Such steps may include, but are not limited to, the

28    following as the Receiver deems necessary or advisable: (1) serving this Order on any

Proposed Temporary Restraining Order                - 17 -

1   person or entity; (2) completing a written inventory of receivership assets; (3) obtaining

2   pertinent information from all employees and other agents of the Receivership

3   Defendants including, but not limited to, the name, home address, social security

4   number, job description, method of compensation, and all accrued and unpaid

5   commissions and compensation of each such employee or agent; (4) video taping all

6   portions of the business premises; (5) changing the locks and disconnecting any

7   computer modems or other means of access to the computer or other records maintained

8   at the business premises; (6) requiring any persons present on the business premises at

9   the time this Order is served to leave the premises, to provide the Receiver with proof of

10  identification, or to demonstrate to the satisfaction of the Receiver that such persons are

11  not removing from the premises documents or assets of the Receivership Defendants;

12  and (7) notwithstanding any other provision of this Order, the Receiver shall determine

13  what constitutes reasonable access by other persons or entities to the business premises

14  of the Receivership Defendants;

15  D.   Investigate, conserve, hold, and manage all receivership assets, and perform all acts

16  necessary or advisable to preserve the value of those assets in an effort to prevent any

17  irreparable loss, damage or injury to consumers or to creditors of the Receivership

18  Defendants including, but not limited to, obtaining an accounting of the assets, and

19  preventing transfer, withdrawal or misapplication of assets;

20  E.   Enter into contracts and purchase insurance as advisable or necessary;

21  F.   Prevent the inequitable distribution of assets and determine, adjust, and protect the

22  interests of consumers and creditors who have transacted business with the

23  Receivership Defendants;

24  G.   Manage and administer the business of the Receivership Defendants until further order

25  of this Court by performing all incidental acts that the Receiver deems to be advisable

26  or necessary, which include retaining, hiring, or dismissing any employees, independent

27  contractors, or agents;

28

Proposed Temporary Restraining Order          - 18 -

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

|   |   |   |
|---|---|---|
| 1 | H. | Choose, engage, and employ attorneys, accountants, appraisers, and other independent |
| 2 |    | contractors and technical specialists (collectively, "Professionals"), as the Receiver |
| 3 |    | deems advisable or necessary in the performance of duties and responsibilities under the |
| 4 |    | authority granted by this Order, which Professionals shall apply for payment of fees and |
| 5 |    | costs along with the Receiver and be paid from the assets of the receivership estate; |
| 6 | I. | Make payments and disbursements from the receivership estate that are necessary or |
| 7 |    | advisable for carrying out the directions of, or exercising the authority granted by, this |
| 8 |    | Order; |
| 9 | J. | Determine and implement the manner in which the Receivership Defendants will |
| 10 |   | comply with, and prevent violations of, this Order and all other applicable laws |
| 11 |   | including, but not limited to, revising sales materials and implementing monitoring |
| 12 |   | procedures; |
| 13 | K. | Institute, compromise, adjust, defend, appear in, intervene in, or become party to such |
| 14 |   | actions or proceedings in state, federal or foreign courts that the Receiver deems |
| 15 |   | necessary and advisable to preserve or recover the assets of the Receivership |
| 16 |   | Defendants or that the Receiver deems necessary and advisable to carry out the |
| 17 |   | Receiver's mandate under this Order, including but not limited to, the filing of a petition |
| 18 |   | for bankruptcy; |
| 19 | L. | Defend, compromise, adjust or otherwise dispose of any or all actions or proceedings |
| 20 |   | instituted in the past or in the future against the Receiver in his or her role as receiver, |
| 21 |   | or against the Receivership Defendants that the Receiver deems necessary and advisable |
| 22 |   | to preserve the assets of the Receivership Defendants, or that the Receiver deems |
| 23 |   | necessary and advisable to carry out the Receiver's mandate under this Order, all |
| 24 |   | notwithstanding the Stay of Actions set forth in Paragraph XIV of this Order; |
| 25 | M. | Continue and conduct the business of the Receivership Defendants in such manner, to |
| 26 |   | such extent, and for such duration as the Receiver may in good faith deem to be |
| 27 |   | necessary and advisable to operate the business profitably and lawfully, if at all; |
| 28 |   | *provided, however,* that the continuation and conduct of the business shall be |

Proposed Temporary Restraining Order          - 19 -

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-5350

1    conditioned upon the Receiver's good faith determination that the business can be

2    lawfully operated at a net profit using the assets of the receivership estate and without

3    resort to any unfair or deceptive practices including, without limitation, those identified

4    as such by the FTC in this matter whether in the Complaint or in subsequent filings; and

5    taking into account, among other things, that the fees and costs of the Receiver and the

6    Professionals must be paid as senior priority administrative expenses of the receivership

7    estate;

8   N.   Conduct investigations and issue subpoenas to obtain documents and records pertaining

9    to, or in aid of, the receivership, and conduct discovery in this action on behalf of the

10    receivership estate;

11   O.   Open one or more bank accounts in the Western District of Washington as designated

12    depositories for funds of the Receivership Defendants. The Receiver shall deposit all

13    funds of the Receivership Defendants in such a designated account and shall make all

14    payments and disbursements from the receivership estate from such an account;

15   P.   Maintain accurate records of all receipts and expenditures that he or she makes as

16    Receiver; and

17   Q.   Cooperate with reasonable requests for information or assistance from any state or

18    federal law enforcement agency.

19   **X. Cooperation With The Temporary Receiver**

20    **IT IS FURTHER ORDERED** that the Defendants and all other persons or entities served with

21   a copy of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance

22   shall include, but not be limited to, providing any information to the Receiver that the Receiver deems

23   necessary to exercising the authority and discharging the responsibilities of the Receiver under this

24   Order; providing any password required to access any computer, electronic account, or digital file or

25   telephonic data in any medium; turning over all accounts, files, and records including those in

26   possession or control of attorneys or accountants; and advising all persons who owe money to the

27   Receivership Defendants that all debts should be paid directly to the Receiver. Defendants are hereby

28   temporarily restrained and enjoined from directly or indirectly:

Proposed Temporary Restraining Order          - 20 -

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    A.   Transacting any of the business of the Receivership Defendants;

2    B.   Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any

3         documents of the Receivership Defendants including, but not limited to, books, records,

4         accounts, writings, drawings, graphs, charts, photographs, audio and video recordings,

5         computer records, and other data compilations, electronically-stored records, or any

6         other papers of any kind or nature;

7    C.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating,

8         or otherwise disposing of any assets owned, controlled, or in the possession or custody

9         of, or in which an interest is held or claimed by, the Receivership Defendants or the

10       Receiver;

11    D.   Drawing on any existing line of credit available to Receivership Defendants;

12    E.   Excusing debts owed to the Receivership Defendants;

13    F.   Failing to notify the Receiver of any asset, including accounts, of the Receivership

14         Defendants held in any name other than the name of any of the Receivership

15         Defendants, or by any person or entity other than the Receivership Defendants, or

16         failing to provide any assistance or information requested by the Receiver in connection

17         with obtaining possession, custody or control of such assets;

18    G.   Doing any act that would, or failing to do any act which failure would, interfere with

19         the Receiver's taking custody, control, possession, or management of the assets or

20         documents subject to this receivership; or to harass or interfere with the Receiver in any

21         way; or to interfere in any manner with the exclusive jurisdiction of this Court over the

22         assets or documents of the Receivership Defendants; or to refuse to cooperate with the

23         Receiver or the Receiver's duly authorized agents in the exercise of their duties or

24         authority under any Order of this Court; and

25    H.   Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for

26         relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (2002), without

27         prior permission from this Court.

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6250

**XI. Delivery of Receivership Property**

**IT IS FURTHER ORDERED** that:

A.    Immediately upon service of this Order upon them, or within such period as may be
permitted by the Receiver, Defendants or any other person or entity shall transfer or
deliver possession, custody, and control of the following to the Receiver:

1.    All assets of the Receivership Defendants, including, without limitation, bank
accounts, web sites, buildings or office space owned, leased, rented, or
otherwise occupied by the Receivership Defendants;

2.    All documents of the Receivership Defendants, including, but not limited to,
books and records of accounts, legal files (whether held by Defendants or their
counsel) all financial and accounting records, balance sheets, income statements,
bank records (including monthly statements, canceled checks, records of wire
transfers, and check registers), client lists, title documents, and other papers;

3.    All of the Receivership Defendants' accounting records, tax records, and tax
returns controlled by, or in the possession of, any bookkeeper, accountant,
enrolled agent, licensed tax preparer or certified public accountant;

4.    All loan applications made by or on behalf of Receivership Defendants and
supporting documents held by any type of lender including, but not limited to,
banks, savings and loans, thrifts or credit unions;

5.    All assets belonging to members of the public now held by the Receivership
Defendants; and

6.    All keys and codes necessary to gain or secure access to any assets or
documents of the Receivership Defendants including, but not limited to, access
to their business premises, means of communication, accounts, computer
systems or other property;

B.    In the event any person or entity fails to deliver or transfer any asset or otherwise fails
to comply with any provision of this Paragraph, the Receiver may file *ex parte* an
Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1               Court may authorize, without additional process or demand, Writs of Possession or

2               Sequestration or other equitable writs requested by the Receiver.  The writs shall

3               authorize and direct the United States Marshal or any sheriff or deputy sheriff of any

4               county, or any other federal or state law enforcement officer, to seize the asset,

5               document or other thing and to deliver it to the Receiver.

6               **XII.  Transfer of Funds to the Temporary Receiver**

7      **IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all banks, broker-

8 dealers, savings and loans, escrow agents, title companies, leasing companies, landlords, ISOs, credit

9 and debit card processing companies, insurance agents, insurance companies, commodity trading

10 companies or any other person, including relatives, business associates or friends of the Defendants, or

11 their subsidiaries or affiliates, holding assets of the Receivership Defendants or in trust for

12 Receivership Defendants shall cooperate with all reasonable requests of the Receiver relating to

13 implementation of this Order, including freezing and transferring funds at his or her direction and

14 producing records related to the assets of the Receivership Defendants.

15               **XIII.  Collection of Receivership Defendants' Mail**

16      **IT IS FURTHER ORDERED** that:

17      A.    The Individual Defendants are hereby restrained and enjoined from opening mail

18               addressed to any of the Receivership Defendants, including but not limited to such mail

19               at the following address:

20               1215 Earnest S. Brazill Street, Bldg. 33, Tacoma, WA 98405

21               and any address used by either of the Individual Defendants;

22      B.    The Receiver is authorized to open all such mail addressed to any Receivership

23               Defendant.

24      C.    Any funds enclosed in any mail shall be maintained and accounted for by the Receiver

25               until further order by the Court.

26      D.    An Individual Defendant who receives such mail addressed to any Receivership

27               Defendant shall promptly deliver it to the Receiver.

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1          interfere in any manner with the exclusive jurisdiction of this Court over the

2          assets or documents of the Receivership Defendants;

3     B.   This Paragraph does not stay:

4          1.   The commencement or continuation of a criminal action or proceeding;

5          2.   The commencement or continuation of an action or proceeding by a

6               governmental unit, including without limitation the Federal Trade Commission,

7               to enforce such governmental unit's police or regulatory power;

8          3.   The enforcement of a judgment, other than a money judgment, obtained in an

9               action or proceeding by a governmental unit to enforce such governmental unit's

10              police or regulatory power;

11         4.   The issuance to the Receivership Defendants of a notice of tax deficiency; and

12    C.   Except as otherwise provided in this Order, all persons and entities in need of

13         documentation from the Receiver shall in all instances first attempt to secure such

14         information by submitting a formal written request to the Receiver, and, if such request

15         has not been responded to within 30 days of receipt by the Receiver, any such person or

16         entity may thereafter seek an Order of this Court with regard to the relief requested.

17                        **XV. Compensation of Temporary Receiver**

18         IT IS FURTHER ORDERED that the Receiver and his or her Professionals and all personnel

19    hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are

20    entitled to reasonable compensation for the performance of duties pursuant to this Order and for the

21    cost of actual out-of-pocket expenses incurred by them, which compensation shall be derived

22    exclusively from the assets now held by, or in the possession or control of, or which may be received

23    by the Receivership Defendants or which are otherwise recovered by the Receiver. The Receiver and

24    Professionals shall file with the Court and serve on the parties statements on a monthly basis, which

25    shall include a description of all services provided and expenses incurred, with the first such statement

26    filed no later than 30 days after the date of this Order. If no objection to the fees and expenses in the

27    statements is filed with the Court by any party within 14 days of service of the statements, then the

28    Receiver shall be authorized to pay such statements on an interim basis, with final approval thereof to

FEDERAL TRADE COMMISSION
915 Second Ave., Su. 2896
Seattle, Washington 98174
(206) 220-6350

1 | be reserved until the closing of the case. The Receiver shall not increase the hourly rates used as the
2 | bases for such fee applications without prior approval of the Court.

3 |                          **XVI. Temporary Receiver's Bond/Liability** .
4 |        **IT IS FURTHER ORDERED** that no bond shall be required in connection with the      .
5 | appointment of the Receiver. Except for an act of gross negligence, the Receiver and the Professionals
6 | shall not be liable for any loss or damage incurred by any of the Defendants, their officers, agents,
7 | servants, employees and attorneys or any other person, by reason of any act performed or omitted to be
8 | performed by the Receiver and the Professionals in connection with the discharge of his or her duties   .
9 | and responsibilities, including but not limited to their withdrawal from the case under Paragraph XVII.

10 |
11 |                          **XVII. Withdrawal of Temporary Receiver**
       **IT IS FURTHER ORDERED** that the Receiver and any Professional retained by the
12 |
       Receiver, including but not limited to his or her attorneys and accountants, be and are hereby
13 |
       authorized to withdraw from their respective appointments or representations and apply for payment of
14 |
       their professionals fees and costs at any time after the date of this Order, for any reason in their sole
15 |
       and absolute discretion, by sending written notice seven (7) days prior to the date of the intended
16 |
       withdrawal to the Court and to the parties along with a written report reflecting the Receiver's work,
17 |
       findings, and recommendations, as well as an accounting for all funds and assets in possession or
18 |
       control of the Receiver. The Receiver and Professionals shall be relieved of all liabilities and      .
19 |
       responsibilities, and the Receiver shall be exonerated and the receivership deemed closed seven (7)
20 |
       days from the date of the mailing of such notice of withdrawal. The Court will retain jurisdiction to
21 |
       consider the fee applications, report, and accounting submitted by the Receiver and the Professionals.
22 |
       The written notice shall include an interim report indicating the Receiver's actions and reflect the
23 |
       knowledge gained along with the fee applications of the Receiver and his or her Professionals. The
24 |
       report shall also contain the Receiver's recommendations, if any.
25 |
                          **DEFENDANTS' REPORTING AND RELATED OBLIGATIONS**
26 |
                          **XVIII. Financial Reports and Accounting**
27 |        **IT IS FURTHER ORDERED** that, within five business days following the service of this
28 | Order:

FEDERAL TRADE COMMISSION
915 Second Ave., Su. 2896
Seattle, Washington 98174
(206) 220-6350

1  A.  Each Individual Defendant shall prepare and deliver to counsel for the Commission a

2     completed financial statement on the form captioned "Financial Statement of Individual

3     Defendant," which is attached to this Order as Attachment A;

4  B.  Unless otherwise agreed upon with Counsel for the Commission and the Receiver,

5     Defendants Paul Morris Thompson and Miranda Cavender shall also prepare and

6     deliver to counsel for the Commission a completed financial statement on the form

7     captioned "Financial Statement of Corporate Defendant," which is attached to this

8     Order as Attachment B, for each Corporate Defendant, and for each business entity

9     owned, controlled or managed by an Individual Defendant, regardless of whether that

10    business entity is a defendant in this case. The financial statements shall be accurate as

11    of the date and time of entry of this Order; and

12 C.  Each Defendant shall also prepare and deliver to counsel for the Commission:

13    1.  A completed statement, verified under oath:

14        a.  specifying the name and address of each financial institution and

15            brokerage firm at which the Defendant has accounts or safe deposit

16            boxes. Said statements shall include assets held in foreign as well as

17            domestic accounts; and

18        b.  listing all person who have received payments, transfers, or assignment

19            of funds, assets, or property which total $10,000 or more in any twelve-

20            month period since January 1, 2005. This list shall specify: (a) the

21            amount(s) transferred or assigned; (b) the name of each transferee or

22            assignee; (c) the date of the assignment or transfer; and (d) the type and

23            amount of consideration paid to the Defendant;

24    2.  For all goods and services advertised, marketed, promoted, offered for sale,

25        distributed, or sold by the Defendant, a detailed accounting, verified under oath,

26        of:

Proposed Temporary Restraining Order          - 27 -

a.   all gross revenues obtained from the sale or distribution of each such

product or service (broken down by month and year) from January 1,

2005, through the date of the issuance of this Order;

b.   all net profits obtained from the sale or distribution of each such product

or service (broken down by month and year) from January 1, 2005,

through the date of the issuance of this Order;

c.   the total amount of each such product sold or distributed (broken down

by month and year) from January 1, 2005, through the date of the

issuance of this Order; and

d.   the full names, addresses, and telephone numbers of all purchasers or

recipients of each such product, and the amount paid by each  from

January 1, 2005, through the date of the issuance of this Order; and

D.   The Defendants shall each provide the Commission access to records and documents

pertaining to Defendants that are held by financial institutions outside the territory of

the United States by signing the "Consent to Release of Financial Records," which is

attached to this Order as Attachment C.

### XIX. Preserving and Keeping Records / Business Operations

IT IS FURTHER ORDERED that Defendants are hereby temporarily restrained and enjoined
from:

A.   Failing to create and maintain documents that, in reasonable detail, accurately, fairly,

and completely reflect their incomes, disbursements, transactions, and use of money,

beginning as of the date and time of effective service of this Order;

B.   Failing to make and keep books, records, accounts, bank statements, current

accountants' reports, general ledgers, general journals, cash receipt ledgers, cash

disbursement ledgers and source documents, documents indicating title to real or

personal property, and any other data which, in reasonable detail, accurately and fairly

reflect the transactions and dispositions of the assets of Defendants;

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1    C.    Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise
2          disposing of, in any manner, directly or indirectly, any documents that relate to the
3          business practices or business or personal finances of Defendants, or to the business
4          practices or finances of entities directly or indirectly under the control, in whole or in
5          part, of Defendants, including, without limitation, books, records, tapes, discs,
6          accounting data, checks (fronts and backs), correspondence, forms, advertisements,
7          brochures, manuals, electronically stored data, banking records, customer lists,
8          customer files, invoices, telephone records, ledgers, payroll records, or other documents
9          of any kind, including information stored in computer-maintained form, in their
10         possession, custody or control; and

11   D.    Creating, operating or exercising any control over any business entity, including any
12         partnership, limited partnership, joint venture, sole proprietorship or corporation,
13         without first providing the Commission with a written statement disclosing:  (1) the
14         name of the business entity; (2) the address and telephone number of the business
15         entity; (3) the names of the business entity's officers, directors, principals, managers,
16         and employees; and (4) a detailed description of the business entity's intended activities.

17                        **XX.  Distribution of Order by Defendants**

18   **IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order
19   to each affiliate, partner, division, sales entity, successor, assign, employee, independent contractor,
20   agent, payment processor, attorney, and representative, of Defendants and shall, within ten days from
21   the date of entry of this Order, serve upon counsel for the Commission a sworn statement that they
22   have complied with this provision of the Order, which statement shall include the names and addresses
23   of each such person or entity who received a copy of the Order.

24              **ORDER TO SHOW CAUSE AND MISCELLANEOUS PROVISIONS**

25                              **XXI.  Order to Show Cause**

26   **IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 65(b) that
27   Defendants shall appear before this Court, Courtroom B, U.S. Courthouse, 1717 Pacific Avenue,
28   Tacoma, Washington, on the 6th day of July, 2009, at **10:30** o'clock a.m. (PDT), to show cause, if there

Proposed Temporary Restraining Order                - 29 -

1   is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint

2   against Defendants, enjoining them from further violations of Section 5(a) of the FTC Act, 15 U.S.C. §

3   45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, continuing the freeze of

4   their assets, continuing the receivership, and imposing such additional relief as may be appropriate.

5   <div align="center">**XXII.  Limited Expedited Discovery**</div>

6         **IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a),

7   34, and 45, Plaintiff and the Receiver are granted leave, at any time after service of this Order, to:

8       A.     Take the deposition, including depositions upon forty-eight hours' written notice, of

9             any person, whether or not a party, for the purpose of discovering the nature, location,

10           status, and extent of assets of Defendants or of their affiliates or subsidiaries; the nature

11           and location of documents reflecting the business transactions of Defendants; the

12           whereabouts of Defendants; and the applicability of any evidentiary privileges to this

13           action.  The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) and

14           31(a)(2)(B) regarding subsequent depositions of an individual shall not apply to

15           depositions taken pursuant to this Paragraph.  Any such depositions taken pursuant to

16           this Paragraph shall not be counted toward the ten-deposition limit set forth in Fed. R.

17           Civ. P. 30(a)(2)(A) and 31(a)(2)(A).  Service of discovery upon a party, taken pursuant

18           to this Paragraph, shall be sufficient if made by facsimile or by overnight delivery; and

19       B.     Demand the production of documents, on five days' notice, from any person, whether or

20           not a party, relating to the nature, status or extent of assets of Defendants or of their

21           affiliates or subsidiaries; the location of documents reflecting the business transactions

22           of Defendants; the whereabouts of Defendants; and the applicability of any evidentiary

23           privileges to this action; *provided* that 24 hours' notice shall be deemed sufficient for

24           the production of any such documents that are maintained or stored as electronic data.

25   <div align="center">**XXIII.  Service of Order**</div>

26         **IT IS FURTHER ORDERED** that copies of this Order may be served by any means,

27   including facsimile transmission, upon any financial institution, or other entity or person that may have

28   possession, custody, control or knowledge of any documents or assets of any Defendant or any other

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1  entity or person that may otherwise be subject to any provision of this Order. Service without
2  Attachments shall effect service of the Order. Service upon any branch or office of any financial
3  institution shall effect service upon the entire financial institution.

### XXIV. Credit Reports

4
5  IT IS FURTHER ORDERED that pursuant to Section 604(a)(1) of the Fair Credit Reporting
6  Act, 15 U.S.C. § 1681b(a)(1), any consumer reporting agency served with this Order shall promptly
7  furnish credit reports concerning a Defendant to the FTC and the Receiver.

### XXV. Duration of Temporary Restraining Order

8
9  IT IS FURTHER ORDERED that this Order shall expire on July 6, 2009, unless within such
10  time the Order, for good cause shown, is extended for an additional period not to exceed ten days, or
11  unless it is further extended with the consent of the parties.

### XXVI. Service of Documents and Evidence

12  IT IS FURTHER ORDERED that Defendants, in responding to this Court's Order to Show
13  Cause, shall serve all memoranda, affidavits, and other evidence on which they intend to rely not later
14  than 4:00 p.m. (PDT) of the fourth day prior to the preliminary injunction hearing set in this matter.
15  Service on the Commission shall be performed by personal delivery, or confirmed facsimile delivery,
16  to Maxine R. Stansell and Eleanor Durham, at the following address: Federal Trade Commission, 915
17  Second Ave., Suite 2896, Seattle, WA 98174, (206) 220-6366 (fax number). The Commission may
18  serve and file a supplemental memorandum of points and authorities based on evidence discovered
19  subsequent to the filing of its Complaint by no later than 4:00 p.m. (PDT) of the fourth day prior to the
20  preliminary injunction hearing, and may serve and file a reply to Defendants' opposition by no later
21  than 4:00 p.m. (PDT) on the day prior to the preliminary injunction hearing.

### XXVII. No Examination of Witnesses

22
23  IT IS FURTHER ORDERED that there will be no direct examination of witnesses at the
24  preliminary injunction hearing in this matter.

25
26
27
28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1

**XXVIII. Retention of Jurisdiction**

2       IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all

3   purposes.

4       SO ORDERED.

5

6       DATED this 26th day of June, 2009.

7                                   Ronald B. Leighton

8                                   RONALD B. LEIGHTON
                                    UNITED STATES DISTRICT JUDGE

9

10   Presented by:

11   DAVID C. SHONKA
     Acting General Counsel
12

13   CHARLES A. HARWOOD
     Regional Director
14

15

16   /s/ Maxine R. Stansell
     MAXINE R. STANSELL, WSBA No. 9418
17   ELEANOR DURHAM, Member, Maryland Bar
     Attorneys for Plaintiff
18   FEDERAL TRADE COMMISSION

19

20

21

22

23

24

25

26

27

28

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

## FEDERAL TRADE COMMISSION

## FINANCIAL STATEMENT OF INDIVIDUAL DEFENDANT

**Instructions:**

1.  Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.  "Dependents" include your live-in companion, dependent children, or any other person, whom you or your spouse (or your children's other parent) claimed or could have claimed as a dependent for tax purposes at any time during the past five years.

3.  "Assets" and "Liabilities" include ALL assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.

4.  Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number(s) being continued.

5.  Type or print legibly.

6.  Initial each page in the space provided in the lower right corner.

7.  Sign and date the completed financial statement on the last page.

**Penalty for False Information:**

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration" (18 U.S.C. § 1623).

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

Attachment A

## BACKGROUND INFORMATION

**Item 1.**      **Information About You**

Your Full Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____ Drivers License No. _____

Current Address _____ From (Date) _____ _____

Rent or Own? _____ Telephone No. _____ Facsimile No. _____

E-Mail Address _____ Internet Home Page _____ _____

Previous Addresses for past five years:

Address_____ Rent or Own?_____ From/Until_____

Address _____ Rent or Own?_____ From/Until_____

Identify any other name(s) and/or social security number(s) you have used, and the time period(s) during which they

were used_____

**Item 2.**      **Information About Your Spouse or Live-In Companion**

Spouse/Companion's Name _____ Social Security No. _____

Place of Birth _____ Date of Birth _____

Identify any other name(s) and/or social security number(s) your spouse/companion has used, and the time period(s)

during which they were used _____

Address (if different from yours) _____

From (Date) _____ Rent or Own?_____ Telephone No._____

Employer's Name and Address _____

Job Title _____ Years in Present Job _____ Annual Gross Salary/Wages $_____

**Item 3.**      **Information About Your Previous Spouse**

Previous Spouse's Name & Address _____

_____ Social Security No. _____ Date of Birth _____

**Item 4.**      **Contact Information**

Page 2

Initials _____

Name & Address of Nearest Living Relative or Friend _____

_____ Telephone No. _____

**Item 5.**   **Information About Dependents Who Live With You**

•Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

•Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

•Name _____ Date of Birth _____

Relationship _____ Social Security No. _____

**Item 6.**   **Information About Dependents Who Do Not Live With You**

•Name & Address _____

Date of Birth _____ Relationship _____ Social Security No._____

•Name Address _____

Date of Birth _____ Relationship _____ Social Security No._____

•Name & Address _____

Date of Birth _____ Relationship _____. Social Security No._____

**Item 7.**   **Employment Information**

Provide the following information for this year-to-date and for each of the previous five full years, for each company of which you were a director, officer, employee, agent, contractor, participant or consultant at any time during that period. "Income" includes, but is not limited to, any salary, commissions, draws, consulting fees, loans, loan payments, dividends, royalties or other benefits for which you did not pay (*e.g.*, health insurance premiums, automobile lease or loan payments) received by you or anyone else on your behalf.

•Company Name & Address _____

Dates Employed: From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

**Item 7. continued**

Page 3

Attachment A

Initials _____

Income Received:  This year-to-date: $_____   _____: $_____

20____: $_____   _____: $_____

_____: $_____   _____: $_____

• Company Name & Address _____

Dates Employed: From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received:  This year-to-date: $_____   _____: $_____

20____: $_____   _____: $_____

_____: $_____   _____: $_____

• Company Name & Address _____

Dates Employed:  From (Month/Year) _____ To (Month/Year) _____

Positions Held with Beginning and Ending Dates _____

_____

Income Received:  This year-to-date: $_____   _____: $_____

20____: $_____   _____: $_____

_____: $_____   _____: $_____

## Item 8.     Pending Lawsuits Filed by You or Your Spouse

List all pending lawsuits that have been filed by you or your spouse in court or before an administrative agency.  (List lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

## Item 9.     Pending Lawsuits Filed Against You or Your Spouse

List all pending lawsuits that have been filed against you or your spouse in court or before an administrative agency.  (List

Attachment A

Initials _____

lawsuits that resulted in final judgments or settlements in Items 16 and 25).

Opposing Party's Name & Address _____

Court's Name & Address _____

Docket No. _____ Relief Requested _____ Nature of Lawsuit _____

_____ Status _____

**Item 10.**    **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by you, your spouse, or any of your dependents, or held by others for the benefit of you, your spouse, or any of your dependents. *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| | | |
| | | |
| | | |

**Item 11.**    **Business Interests**

List all businesses for which you, your spouse, or your dependents are an officer or director.

• Business' Name & Address _____

Business Format (*e.g.*, corporation) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

• Business' Name & Address _____

Business Format (*e.g.*, corporation) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

• Business' Name & Address _____

Business Format (*e.g.*, corporation) _____ Description of Business _____

_____ Position(s) Held, and By Whom _____

Page 5

Attachment A

Initials _____

## FINANCIAL INFORMATION:  ASSETS AND LIABILITIES

**REMINDER:  "Assets" and "Liabilities" include <u>ALL</u> assets and liabilities, located within the United States or elsewhere, whether held individually or jointly.**

**Item 12.**        **Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.  The term "cash" includes currency and uncashed checks.

Cash on Hand  $_____          Cash Held For Your Benefit  $_____

| <u>Name on Account</u> | <u>Name & Address of  Financial Institution</u> | <u>Account No.</u> | <u>Current Balance</u> |
|---|---|---|---|
| | | | $_____ |
| | | | $_____ |
| | | | $_____ |
| | | | $_____ |
| | | | $_____ |
| | | | $_____ |

**Item 13.**        **U.S. Government Securities**

List all U.S. Government securities, including but not limited to, savings bonds, treasury bills, and treasury notes, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| <u>Name on Account</u> | <u>Type of Obligation</u> | <u>Security Amount</u> | <u>Maturity Date</u> |
|---|---|---|---|
| | | $_____ | |
| | | $_____ | |
| | | $_____ | |

**Item 14.**        **Publicly Traded Securities and Loans Secured by Them**

Page  6

Attachment A

Initials _____

List all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

• Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

• Issuer _____ Type of Security _____ No. of Units Owned _____

Name on Security _____ Current Fair Market Value $_____ Loan(s) Against Security $_____

Broker House, Address _____ Broker Account No. _____

**Item 15.**     **Other Business Interests**

List all other business interests, including but not limited to, non-public corporations, subchapter-S corporations, limited liability corporations ("LLCs"), general or limited partnership interests, joint ventures, sole proprietorships, and oil and mineral leases, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

• Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

• Business Format _____ Business' Name & Address _____

_____ Ownership % _____

Owner (e.g., self, spouse) _____ Current Fair Market Value $_____

**Item 16.**     **Monetary Judgments or Settlements Owed to You, Your Spouse, or Your Dependents**

List all monetary judgments or settlements owed to you, your spouse, or your dependents.

• Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____

• Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date of Judgment _____ Amount $_____
**Item 17.**     **Other Amounts Owed to You, Your Spouse, or Your Dependents**

Page 7

Attachment A

Initials _____

List all other amounts owed to you, your spouse, or your dependents.

Debtor's Name, Address, & Telephone No. _____

Original Amount Owed $_____ Current Amount Owed $_____ Monthly Payment $_____

## **Item 18.**    **Life Insurance Policies**

List all life insurance policies held by you, your spouse, or your dependents.

• Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____ Beneficiary _____ Face Value $_____

Policy No. _____ Loans Against Policy $_____ Surrender Value $_____

• Insurance Company's Name, Address, & Telephone No. _____

_____

Insured _____ Beneficiary _____ Face Value $_____

Policy No. _____ Loans Against Policy $_____ Surrender Value $_____

## **Item 19.**    **Deferred Income Arrangements**

List all deferred income arrangements, including but not limited to, deferred annuities, pensions plans, profit-sharing plans, 401(k) plans, IRAs, Keoghs, and other retirement accounts, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

• Name on Account _____ Type of Plan _____ Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____ Surrender Value $_____

• Name on Account _____ Type of Plan _____ Date Established _____

Trustee or Administrator's Name, Address & Telephone No. _____

_____

Account No. _____ Surrender Value $_____

## **Item 20.**    **Personal Property**

List all personal property, by category, whether held for personal use or for investment, including but not limited to,

Attachment A

Initials _____

furniture and household goods of value, computer equipment, electronics, coins, stamps, artwork, gemstones, jewelry, bullion, other collectibles, copyrights, patents, and other intellectual property, held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

| Property Category (e.g., artwork, jewelry) | Name of Owner | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

## Item 21.  Cars, Trucks, Motorcycles, Boats, Airplanes, and Other Vehicles

List all cars, trucks, motorcycles, boats, airplanes, and other vehicles owned or operated by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

• Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

• Vehicle Type _____ Make _____ Model _____ Year _____

Registered Owner's Name _____ Registration State & No. _____

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

### Item 21. Continued

• Vehicle Type _____ Make _____ Model _____ Year _____

Page 9

Attachment A

Initials _____

Registered Owner's Name _____ Registration State & No. _____ .

Address of Vehicle's Location _____

Purchase Price $_____ Current Value $_____ Account/Loan No. _____

Lender's Name and Address _____

Original Loan Amount $_____ Current Loan Balance $_____ Monthly Payment $_____

### Item 22.   Real Property

List all real estate held by you, your spouse, or your dependents, or held by others for the benefit of you, your spouse, or your dependents.

• Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address _____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

• Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Acquisition Date_____ Purchase Price $_____ Current Value $_____

Basis of Valuation_____ Loan or Account No._____

Lender's Name and Address _____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

### Item 23.   Credit Cards

List each credit card held by you, your spouse, or your dependents. Also list any other credit cards that you, your spouse, or your dependents use.

Page 10

Attachment A

Initials _____

| Name of Credit Card (e.g., Visa, MasterCard, Department Store) | Account No. | Name(s) on Account | Current Balance | Minimum Monthly Payment |
|---|---|---|---|---|
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |
| | | | $ | $ |

#### Item 24.     Taxes Payable

List all taxes, such as income taxes or real estate taxes, owed by you, your spouse, or your dependants.

| Type of Tax | Amount Owed | Year Incurred |
|---|---|---|
| | $ | |
| | $ | |
| | $ | |
| | $ | |

#### Item 25.     Judgments or Settlements Owed

List all judgments or settlements owed by you, your spouse, or your dependents.

Opposing Party's Name & Address _____

Court's Name & Address _____ Docket No. _____

Nature of Lawsuit _____ Date _____ Amount $ _____

Page 11

Attachment A

Initials _____

**Item 26.     Other Loans and Liabilities**

List all other loans or liabilities in your, your spouse's, or your dependents' names.

•Name & Address of Lender/Creditor _____

Nature of Liability_____     Name(s) on Liability___ _____.

Date of Liability_____ Amount Borrowed $_____ Current Balance $_____

Payment Amount $_____ Frequency of Payment_____

•Name & Address of Lender/Creditor ·_____

Nature of Liability_____     Name(s) on Liability_____

Date of Liability_____ Amount Borrowed $_____ Current Balance $_____

Payment Amount $_____ Frequency of Payment_____

## OTHER FINANCIAL INFORMATION

**Item 27.     Tax Returns**

List all federal tax returns that were filed during the last three years by or on behalf of you, your spouse, or your dependents. *Provide a copy of each signed tax return that was filed during the last three years.*

| Tax Year | Name(s) on Return | Refund Expected |
|---|---|---|
| | | $_____ |
| | | $_____ |
| | | $_____ |

**Item 28.     Applications for Credit**

List all applications for bank loans or other extensions of credit that you, your spouse, or your dependents have submitted within the last two years. *Provide a copy of each application, including all attachments.*

| Name(s) on Application | Name & Address of Lender |
|---|---|
| | |
| | |
| | |

**Item 29.     Trusts and Escrows**

Page 12

Attachment A

Initials _____

List all funds or other assets that are being held in trust or escrow by any person or entity for you, your spouse, or your dependents. Also list all funds or other assets that are being held in trust or escrow by you, your spouse, or your dependents, for any person or entity. *Provide copies of all executed trust documents.*

| Trustee or Escrow Agent's Name & Address | Date Established | Grantor | Beneficiaries | Present Market Value of Assets |
|---|---|---|---|---|
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |
| | | | | $ |

**Item 30.     Transfers of Assets**

List each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer. For each such person, state the total amount transferred during that period.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

Page 13

Attachment A

Initials _____

## SUMMARY FINANCIAL SCHEDULES

**Item 31.**      **Combined Balance Sheet for You, Your Spouse, and Your Dependents**

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| Cash on Hand (Item 12) | $ _____ | Credit Cards (Item 23) | $ _____ |
| Cash in Financial Institutions (Item 12) | $ _____ | Motor Vehicles - Liens (Item 21) | $ _____ |
| U.S. Government Securities (Item 13) | $ _____ | Real Property - Encumbrances (Item 22) | $ _____ |
| Publicly Traded Securities (Item 14) | $ _____ | Loans Against Publicly Traded Securities (Item 14) | $ _____ |
| Other Business Interests (Item 15) | $ _____ | Taxes Payable (Item 24) | $ _____ |
| Judgments or Settlements Owed to You  (Item 16) | $ _____ | Judgments or Settlements Owed (Item 25) | $ _____ |
| Other Amounts Owed to You (Item 17) | $ _____ | Other Loans and Liabilities (Item 26) | $ _____ |
| Surrender Value of Life Insurance (Item 18) | $ _____ | _Other Liabilities_ (Itemize) | |
| Deferred Income Arrangements (Item 19) | $ _____ | _____ | $ _____ |
| Personal Property (Item 20) | $ _____ | _____ | $ _____ |
| Motor Vehicles (Item 21) | $ _____ | _____ | $ _____ |
| Real Property (Item 22) | $ _____ | _____ | $ _____ |
| _Other Assets_ (Itemize) | | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ |
| **Total Assets** | $ _____ | **Total Liabilities** | $ _____ |

Page  14

Initials _____

Attachment A

**Item 32.**  **Combined Average Monthly Income and Expenses for You, Your Spouse, and Your Dependents for the Last 6 Months**

Provide the average monthly income and expenses for you, your spouse, and your dependents for the last 6 months. Do not include credit card payments separately; rather, include credit card expenditures in the appropriate categories.

| INCOME | | EXPENSES | |
|---|---|---|---|
| Salary - After Taxes | $ | Mortgage Payments for Residence(s) | $ |
| Fees, Commissions, and Royalties | $ | Property Taxes for Residence(s) | $ |
| Interest | $ | Rental Property Expenses, Including Mortgage Payments, Taxes, and Insurance | $ |
| Dividends and Capital Gains | $ | Car or Other Vehicle Lease or Loan Payments | $ |
| Gross Rental Income | $ | Food Expenses | $ |
| Profits from Sole Proprietorships | $ | Clothing Expenses | $ |
| Distributions from Partnerships, S-Corporations, and LLCs | $ | Utilities | $ |
| Distributions from Trusts and Estates | $ | Medical Expenses, Including Insurance | $ |
| Distributions from Deferred Income Arrangements | $ | Other Insurance Premiums | $ |
| Social Security Payments | $ | Other Transportation Expenses | $ |
| Alimony/Child Support Received | $ | Other Household Expenses | $ |
| Gambling Income | $ | Other Expenses (Itemize) | |
| Other Income (Itemize) | | | $ |
| _____ | $ | _____ | $ |
| _____ | $ | _____ | $ |
| _____ | $ | _____ | $ |
| Total Income | $ | Total Expenses | $ |

Attachment A

Initials _____.

## ATTACHMENTS

**Item 33.** **Documents Attached to this Financial Statement**

List all documents that are being submitted with this financial statement.

| Item No. Document Relates To | Description of Document |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_______________________ _______________________________

(Date) Signature

## FEDERAL TRADE COMMISSION

### FINANCIAL STATEMENT OF CORPORATE DEFENDANT

#### Instructions:

1.  Complete all items. Enter "None" or "N/A" ("Not Applicable") where appropriate. If you cannot fully answer a question, explain why.

2.  In completing this financial statement, "the corporation" refers not only to this corporation but also to each of its predecessors that are not named defendants in this action.

3.  When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.

4.  Attach continuation pages as needed. On the financial statement, state next to the Item number that the Item is being continued. On the continuation page(s), identify the Item number being continued.

5.  Type or print legibly.

6.  An officer of the corporation must sign and date the completed financial statement on the last page and initial each page in the space provided in the lower right corner.

#### Penalty for False Information:

Federal law provides that any person may be imprisoned for not more than five years, fined, or both, if such person:

(1) "in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry" (18 U.S.C. § 1001);

(2) "in any . . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true" (18 U.S.C. § 1621); or

(3) "in any (. . . statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration." (18 U.S.C. § 1623)

For a felony conviction under the provisions cited above, federal law provides that the fine may be not more than the greater of (i) $250,000 for an individual or $500,000 for a corporation, or (ii) if the felony results in pecuniary gain to any person or pecuniary loss to any person other than the defendant, the greater of twice the gross gain or twice the gross loss. 18 U.S.C. § 3571.

Attachment B

## BACKGROUND INFORMATION

**Item 1.**     **General Information**

Corporation's Full Name _____

Primary Business Address _____ From (Date) _____

Telephone No. _____ Fax No. _____

E-Mail Address _____ Internet Home Page _____

All other current addresses & previous addresses for past five years, including post office boxes and mail drops:

Address _____ From/Until _____

Address _____ From/Until _____

Address _____ From/Until _____

All predecessor companies for past five years:

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

Name & Address _____ From/Until _____

**Item 2.**     **Legal Information**

Federal Taxpayer ID No. _____ State & Date of Incorporation _____

State Tax ID No. _____ State _____ Profit or Not For Profit _____

Corporation's Present Status: Active _____ Inactive _____ Dissolved _____

If Dissolved: Date dissolved _____ By Whom _____

Reasons _____

Fiscal Year-End (Mo./Day) _____ Corporation's Business Activities _____

**Item 3.**     **Registered Agent**

Name of Registered Agent _____

Address _____ Telephone No. _____

Page 2

Attachment B

Initials _____

**Item 4.** **Principal Stockholders**

List all persons and entities that own at least 5% of the corporation's stock.

| Name & Address | % Owned |
|---|---|
| | |
| | |
| | |
| | |

**Item 5.** **Board Members**

List all members of the corporation's Board of Directors.

| Name & Address | % Owned | Term (From/Until) |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**Item 6.** **Officers**

List all of the corporation's officers, including *de facto* officers (individuals with significant management responsibility whose titles do not reflect the nature of their positions).

| Name & Address | % Owned |
|---|---|
| | |
| | |
| | |
| | |
| | |

Page 3

Attachment B

Initials _____

**Item 7.**        **Businesses Related to the Corporation**

List all corporations, partnerships, and other business entities in which this corporation has an ownership interest.

| Name & Address | Business Activities | % Owned |
|---|---|---|
| | | |
| | | |
| | | |

State which of these businesses, if any, has ever transacted business with the corporation _____

_____

**Item 8.**        **Businesses Related to Individuals**

List all corporations, partnerships, and other business entities in which the corporation's principal stockholders, board members, or officers (i.e., the individuals listed in Items 4 - 6 above) have an ownership interest.

| Individual's Name | Business Name & Address | Business Activities | % Owned |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

State which of these businesses, if any, have ever transacted business with the corporation _____

_____

**Item 9.**        **Related Individuals**

List all related individuals with whom the corporation has had any business transactions during the three previous fiscal years and current fiscal year-to-date. A "related individual" is a spouse, sibling, parent, or child of the principal stockholders, board members, and officers (i.e., the individuals listed in Items 4 - 6 above).

| Name and Address | Relationship | Business Activities |
|---|---|---|
| | | |
| | | |
| | | |

Page 4

Attachment B

Initials _____

**Item 10.**      **Outside Accountants**

· List all outside accountants retained by the corporation during the last three years.

| Name | Firm Name | Address | CPA/PA? |
|------|-----------|---------|---------|
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |
|      |           |         |         |

**Item 11.**      **Corporation's Recordkeeping**

·List all individuals within the corporation with responsibility for keeping the corporation's financial books and records for the last three years.

| Name, Address, & Telephone Number | Position(s) Held |
|-----------------------------------|------------------|
|                                   |                  |
|                                   |                  |
|                                   |                  |
|                                   |                  |

**Item 12.**      **Attorneys**

List all attorneys retained by the corporation during the last three years.

| Name | Firm Name | Address |
|------|-----------|---------|
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |
|      |           |         |

Attachment B

Initials _____

**Item 13.**     **Pending Lawsuits Filed by the Corporation**

List all pending lawsuits that have been filed by the corporation in court or before an administrative agency. (List lawsuits that resulted in final judgments or settlements in favor of the corporation in Item 25).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status_____

Page 6

Attachment B

Initials_____

**Item 14.**     **Current Lawsuits Filed Against the Corporation**

List all pending lawsuits that have been filed against the corporation in court or before an administrative agency.  (List lawsuits that resulted in final judgments, settlements, or orders in Items 26 - 27).

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Opposing Party's Name & Address_____

Court's Name & Address_____

Docket No._____ Relief Requested_____ Nature of Lawsuit_____

_____ Status _____

Page 7

Attachment B

Initials _____

**Item 15.**      **Bankruptcy Information**

List all state insolvency and federal bankruptcy proceedings involving the corporation.

Commencement Date _____ Termination Date _____ Docket No. _____.

If State Court: Court & County _____ If Federal Court: District _____

Disposition _____

**Item 16.**      **Safe Deposit Boxes**

List all safe deposit boxes, located within the United States or elsewhere, held by the corporation, or held by others for the benefit of the corporation. *On a separate page, describe the contents of each box.*

| Owner's Name | Name & Address of Depository Institution | Box No. |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

## FINANCIAL INFORMATION

**REMINDER: When an Item asks for information about assets or liabilities "held by the corporation," include ALL such assets and liabilities, located within the United States or elsewhere, held by the corporation or held by others for the benefit of the corporation.**

**Item 17.**      **Tax Returns**

List all federal and state corporate tax returns filed for the last three complete fiscal years. *Attach copies of all returns.*

| Federal/ State/Both | Tax Year | Tax Due Federal | Tax Paid Federal | Tax Due State | Tax Paid State | Preparer's Name |
|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | |
| | | $ | $ | $ | $ | |

**Item 18.**      **Financial Statements**

Page 8

Attachment B

Initials _____

List all financial statements that were prepared for the corporation's last three complete fiscal years and for the current fiscal year-to-date. *Attach copies of all statements, providing audited statements if available.*

| Year | Balance Sheet | Profit & Loss Statement | Cash Flow Statement | Changes in Owner's Equity | Audited? |
|------|---------------|-------------------------|---------------------|---------------------------|----------|
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |
|      |               |                         |                     |                           |          |

**Item 19.     Financial Summary**

For each of the last three complete fiscal years and for the current fiscal year-to-date for which the corporation has not provided a profit and loss statement in accordance with Item 17 above, provide the following summary financial information.

|                        | Current Year-to-Date | 1 Year Ago | 2 Years Ago | 3 Years Ago |
|------------------------|----------------------|------------|-------------|-------------|
| Gross Revenue          | $                    | $          | $           | $           |
| Expenses               | $                    | $          | $           | $           |
| Net Profit After Taxes | $                    | $          | $           | $           |
| Payables               | $                    |            |             |             |
| Receivables            | $                    |            |             |             |

**Item 20.     Cash, Bank, and Money Market Accounts**

List cash and all bank and money market accounts, including but not limited to, checking accounts, savings accounts, and certificates of deposit, held by the corporation. The term "cash" includes currency and uncashed checks.

Cash on Hand $_____     Cash Held for the Corporation's Benefit $_____

| Name & Address of Financial Institution | Signator(s) on Account | Account No. | Current Balance |
|-----------------------------------------|------------------------|-------------|-----------------|
|                                         |                        |             | $               |
|                                         |                        |             | $               |
|                                         |                        |             | $               |
|                                         |                        |             | $               |

**Item 21.     Government Obligations and Publicly Traded Securities**

Initials _____

Attachment B

List all U.S. Government obligations, including but not limited to, savings bonds, treasury bills, or treasury notes, held by the corporation. Also list all publicly traded securities, including but not limited to, stocks, stock options, registered and bearer bonds, state and municipal bonds, and mutual funds, held by the corporation.

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

Issuer _____ Type of Security/Obligation _____

No. of Units Owned _____ Current Fair Market Value $_____ Maturity Date _____

### Item 22.    Real Estate

List all real estate, including leaseholds in excess of five years, held by the corporation.

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

Type of Property_____ Property's Location_____

Name(s) on Title and Ownership Percentages_____

Current Value $_____ Loan or Account No. _____

Lender's Name and Address_____

Current Balance On First Mortgage $_____ Monthly Payment $_____

Other Loan(s) (describe)_____ Current Balance $_____

Monthly Payment $_____ Rental Unit?_____ Monthly Rent Received $_____

### Item 23.    Other Assets

Page 10

Attachment B

Initials _____

List all other property, by category, with an estimated value of $2,500 or more, held by the corporation, including but not limited to, inventory, machinery, equipment, furniture, vehicles, customer lists, computer software, patents, and other intellectual property.

| Property Category | Property Location | Acquisition Cost | Current Value |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

#### Item 24.        Trusts and Escrows

List all persons and other entities holding funds or other assets that are in escrow or in trust for the corporation.

| Trustee or Escrow Agent's Name & Address | Description and Location of Assets | Present Market Value of Assets |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

#### Item 25.        Monetary Judgments and Settlements Owed To the Corporation

List all monetary judgments and settlements, recorded and unrecorded, owed to the corporation.

Page 11

Initials _____.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____


## Item 26.        Monetary Judgments and Settlements Owed By the Corporation

List all monetary judgments and settlements, recorded and unrecorded, owed by the corporation.

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

Opposing Party's Name & Address_____

Court's Name & Address_____ Docket No._____

Nature of Lawsuit_____ Date of Judgment_____ Amount $_____

## Item 27.        Government Orders and Settlements

List all existing orders and settlements between the corporation and any federal or state government entities.

Name of Agency _____ Contact Person _____

Page 12                                      Initials _____
                          Attachment B

Address _____   Telephone No. _____

Agreement Date _____ Nature of Agreement _____

### Item 28.   Credit Cards

List all of the corporation's credit cards and store charge accounts and the individuals authorized to use them.

| Name of Credit Card or Store | Names of Authorized Users and Positions Held |
|---|---|
| | |
| | |
| | |
| | |
| | |

### Item 29.   Compensation of Employees

List all compensation and other benefits received from the corporation by the five most highly compensated employees, independent contractors, and consultants (other than those individuals listed in Items 5 and 6 above), for the two previous fiscal years and current fiscal year-to-date. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, bonuses, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

### Item 30.   Compensation of Board Members and Officers

List all compensation and other benefits received from the corporation by each person listed in Items 5 and 6, for the current fiscal year-to-date and the two previous fiscal years. "Compensation" includes, but is not limited to, salaries, commissions, consulting fees, dividends, distributions, royalties, pensions, and profit sharing plans. "Other benefits" include, but are not limited to, loans, loan payments, rent, car payments, and insurance premiums, whether paid directly to the individuals, or paid to others on their behalf.

Page 13

Attachment B

Initials _____

| Name/Position | Current Fiscal Year-to-Date | 1 Year Ago | 2 Years Ago | Compensation or Type of Benefits |
|---|---|---|---|---|
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |
| | $ | $ | $ | |

**Item 31.**      **Transfers of Assets Including Cash and Property**

List all transfers of assets over $2,500 made by the corporation, other than in the ordinary course of business, during the previous three years, by loan, gift, sale, or other transfer.

| Transferee's Name, Address, & Relationship | Property Transferred | Aggregate Value | Transfer Date | Type of Transfer (e.g., Loan, Gift) |
|---|---|---|---|---|
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

**Item 32.**      **Documents Attached to the Financial Statement**

List all documents that are being submitted with the financial statement.

Item No. Document      Description of Document
Relates To

Attachment B

Initials _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I am submitting this financial statement with the understanding that it may affect action by the Federal Trade Commission or a federal court. I have used my best efforts to obtain the information requested in this statement. The responses I have provided to the items above are true and contain all the requested facts and information of which I have notice or knowledge. I have provided all requested documents in my custody, possession, or control. I know of the penalties for false statements under 18 U.S.C. § 1001, 18 U.S.C. § 1621, and 18 U.S.C. § 1623 (five years imprisonment and/or fines). I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on:

_____          _____

(Date)                                      Signature

                                            _____

                                            Corporate Position

Attachment B

Initials _____

5th document

09-CV-05380-ORD

1

2

3

4

5

6

7

8

```
FILED _____ LODGED
          RECEIVED

    JUN 29 2009

  CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                        DEPUTY
```

```
     FILED _____ LODGED
               RECEIVED

    JUN 30 2009

     CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                        DEPUTY
```

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

9

10

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Civil No. C09-5380RBL |
| Plaintiff, | |
| v. | NOTICE TO LIFT SEAL |
| MCS PROGRAMS, LLC, a Washington limited liability company, also doing business as Mutual Consolidated Savings; UNITED SAVINGS CENTER, INC., a Washington corporation, also doing business as Mutual Consolidated Savings; USC PROGRAMS, LLC, a Washington limited liability company, also doing business as Mutual Consolidated Savings; PAUL MORRIS THOMPSON, individually and as an officer of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC; and MIRANDA CAVENDER, individually and as a manager of MCS Programs, LLC, United Savings Center, Inc., and USC Programs, LLC; | |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice to Lift Seal- 1

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350

1        Plaintiff Federal Trade Commission hereby notifies the Clerk of the Court that the

2  Defendants in the above-captioned matter have been served and that the file may be unsealed

3  pursuant to the Order Temporarily Sealing Plaintiff's Entire File entered June 26, 2009.

4

5

6  Presented by:

7  WILLARD K. TOM
   General Counsel

8

9  CHARLES A. HARWOOD
   Regional Director

10

11  *Maxine R. Stansell*

12  MAXINE R. STANSELL, WSBA No. 9418

13  ELEANOR DURHAM, Member, Maryland Bar
    Attorneys for Plaintiff

14  FEDERAL TRADE COMMISSION

15

16

17  IT IS SO ORDERED THIS 30th DAY OF June, 2009

18

19  UNITED STATES DISTRICT COURT JUDGE

20

21

22

23

24

25

26

27

28

Notice to Lift Seal- 2

FEDERAL TRADE COMMISSION
915 Second Ave., Ste. 2896
Seattle, Washington 98174
(206) 220-6350